## ATLANTA, KNOXVILLE AND NORTHERN RAILWAY COMPANY *v.* BARKER.

1. When the owner contracts with a railroad company to sell to it a right of way over his land, receives a part of the purchase-money in cash, and takes promissory notes for the balance, reserving title to himself until the same are paid, and consents to the placing on the land of railroad-track, etc., as a part of a continuous line, an action of ejectment can not thereafter be maintained by such owner to dispossess the company of the right of way so procured.
2. Even if in such a case the purchase-money notes remain unpaid, and they become barred by the statute of limitations, this fact is not material in determining the question as to whether the action of ejectment would lie.

Argued June 15, — Decided October 3, 1898.

Complaint for land. Before Judge Gober. Fannin superior court. October term, 1897.

*Alexander & Victor Smith* and *A. S. J. Hall,* for plaintiff in error.

*C. D. Phillips, Brown & Dupree* and *Enoch Faw,* contra.

LITTLE, J. As will be seen, the question which arises in this case is, whether a landowner who has expressly contracted with a railroad company to sell a right of way for the maintenance and operation of a railroad over his land, and who has consented to the placing on such land of a line of railway-track, etc., at great expense upon the part of the vendee, and who, reserving title in himself, made to the railroad company his bond conditioned to convey such right of way upon the payment thereafter of a stipulated sum, is entitled to maintain an action of ejectment against a railroad company which, being the successor of the original vendee, is in the possession of such right of way, on which it is maintaining a line of railroad and operating its cars in the transportation of passengers and freight. As will be seen by the petition, the plaintiff alleges that in February, 1889, he contracted with the Marietta & North Georgia Railroad Company, which was the predecessor of the defendant in error, to sell it a right of way across certain lots of land owned by him in Fannin county; that the purchase of said right of way contemplated the payment of a certain sum of money, of which he

received two hundred dollars in cash and promissory notes of a third person, due thereafter, for the balance; and delivered to the railroad company his bond obligating himself to make title to it whenever the balance of the purchase-money should be paid, with other stipulations unnecessary to be mentioned. The plaintiff further alleges in his petition that he has been paid fifty dollars on the notes, but that the balance is unpaid; and that in pursuance of said contract the company entered upon the lots of land and appropriated the rights of way by its road-beds and tracks, and remained in possession of the same until the railroad was sold to the present defendant in error.

It can not be understood from this state of facts that any question arises as to the right of the railroad company to take the land of another for its use without the payment of just compensation. The land, under the circumstances set out in the petition, was not taken in the exercise of the right of eminent domain, but under contract of purchase, and possession surrendered for the particular purpose of constructing a railroad upon it. Had it been the pleasure of the landowner so to do, he could have forbidden the entry of the company on his land and the appropriation of any part of it to its use, except on payment of its value; and ample power was afforded him by law to enforce this right. While he had undoubtedly the right to do so, he was not compelled to exercise it, and he had the equal right by contract with the company to permit it to occupy his land. The question as to what would be the remedy of a landowner against a railroad company which entered on his land and appropriated a portion of it to its use without his consent, is not involved in the present case; but the sole question is, having agreed to the sale of the land to a railroad company for the express purpose of allowing the company to place its tracks thereon, and to use a right of way over it for the transportation of its cars, and having under the contract agreed that the company could do so, can he thereafter maintain an action of ejectment to oust the company from the possession of the right of way so occupied, because a portion of the purchase-money has not been paid, and because title to such land still remains in him?

The plaintiff in error contends that an action of ejectment

does lie, and cites us to the case of *Remshart* v. *Savannah &
Charleston R. Co.,* 54 *Ga.* 579. It was ruled in that case (3d
headnote) that the complainant, who asked for an injunction
against the continued operation of the road, was not entitled to
it, but if the title to the land was still in him, he could recover·
the land by ejectment. It is important to note that in that
case there was originally no contract made between the railroad
company and the landowner for the sale and purchase of the·
right of way. Nor does. it appear in the brief statement of the·
facts in that case that the landowner consented to the occupancy
of the land by the railroad company. We are also cited to the·
case of *Gammage* v. *G. S. Railroad Co.,* 65 *Ga.* 614. It will be
seen from the facts in that case that proceedings to condemn the·
land of the plaintiff were had by the railroad company and
damages assessed in the legal manner provided. Pending this
litigation the land on which the right of way was located was
sold as the property of Gammage and bought by Sheibley. A
bill was filed by the purchaser alleging an agreement between
himself and the former owner as to the recovery for the right of
way, and praying for an injunction to restrain the defendant
railroad company from passing over the land. The court *ar-
guendo,* in passing on the question whether the plaintiff was en-
titled to a writ of injunction, also said, in effect, that if the title
was in the plaintiff, he had a remedy by ejectment; but it must
also be noted that in that case the original occupation of the land
was against the consent of the owner, who, by the legal means
he possessed, resisted the right of the company to take it. We
are referred to the case of *Alston* v. *Wingfield,* 53 *Ga.* 18,
which, after examination, we think is not applicable to the ques-
tion involved in the present case, the suit there being between
private individuals. The same is true in the case of *McDaniel*
v. *Gray,* 69 *Ga.* 433, to which we were also referred. A similar
state of facts also exists in the case of *Field* v. *Carlton,* 75 *Ga.*
554, which we were asked also to examine. It must be under-
stood that we are not denying the right of the vendor to main-
tain an action of ejectment to recover land sold by him when by
the contract he reserved title in himself until the payment of·
the purchase-money, and where the purchase-money is due and·

has not been paid. As a general proposition that is too well settled to require at our hands any consideration. But the question is whether under the circumstances of this case the plaintiff in this action had this remedy.

In the argument here counsel for defendant in error insisted that if this remedy did not exist in this case, it was because the defendant was a railroad company, and he questioned whether a railroad company had any rights superior to those of an individual. Counsel was right. If this action can not be maintained in the present case, it is because the defendant is a railroad company. Not that a railroad company has or ought to have any more rights than an individual; not because the claims of a railroad company should be entitled to any more consideration than those which any natural person possesses; but it is because a company which has constructed and is operating a railroad between two distant termini, running through several counties, and possibly States, must, for the sake of the public interest involved, be treated as an entirety, and that "one can not stand by and suffer another to expend money to large amounts on his land, as part of a great system of improvement, and then stop by injunction the entire system until he is paid. He must move in limine. He must defend at the threshold. . . Laches is a lock to the door of equity, which few keys, if any, are strong enough to open." *Griffin* v. *Augusta & Knoxville Railroad,* 70 *Ga.* 167. "A railroad with its depots, bridges, and other appurtenances, is no less an entirety than a dwelling-house with its kitchen, its chimneys and its door-steps; and yet no one has ever supposed that a mechanic's lien could be enforced against the door-steps or chimneys of a dwelling-house, or that they could be sold and removed, to the utter destruction of the whole property." *Farmers' Loan Co.* v. *Candler,* 87 *Ga.* 242, quoting from 7 A. & E. R. R. Cases, 395. In a very strong and able opinion delivered by Mr. Justice Cobb in the case of *Charleston & Western Carolina Ry. Co.* v. *Hughes,* ante, 1, and from which we freely quote, it is aptly said: "Controversies in reference to the possession of land, where the rights of individuals only are involved, are purely matters of private concern. Controversies in which a corporation charged with

the duties incumbent upon carriers of passengers, freight, and mails, in which an effort is made by private individuals or others to take away from such corporation a part of the property in its possession, which is absolutely essential to its complete performance of the public duties required of it, become matters of more than private concern, and in which the public is deeply and seriously interested. For this reason it has become settled law that the harsh remedies which would be allowed to one individual against another in reference to the possession of land will not be allowed to one who is seeking to recover such property from a railroad company, when exact justice can be done to such owner by giving to him remedies which are less severe in their nature, and by which he would secure substantially the same rights, thereby saving to the public the right to require a performance of the public duties incumbent upon the corporation whose property is the subject-matter of the controversy. That a railroad corporation has a right to deprive a person of his property for its use by doing acts which in an individual would be dealt with as for a trespass is not contended for; but when a railroad company enters upon land and constructs its road without lawful authority, and the owner acquiesces in the unlawful act and the consequent appropriation of the property to a great public use until the same has become a necessary component part of the property required by the railroad to perform its public duties, such owner will be held to have waived his right to retake the property, and will be remitted to such other remedies for the wrong done him as will not interfere with the rights of the public to have the railroad maintained and operated. If this is the case in reference to unlawful entry, for a stronger reason the same result would follow if the entry by the railroad company in the first instance was by the authority or consent of the landowner, even though it be under a parol license and the legal title to the land still remain in the landowner. The current of modern authority sustains the proposition, that when a railroad company is in possession of land, using it as a right of way, although not having acquired the legal title thereto, the landowner would be estopped from ejecting the company from the premises, if it was shown either that the

·original entry was with his consent, or that the entry without his consent was so long acquiesced in that to allow the company to be ejected would either dismember the property of the company, or essentially interfere with its ability to discharge the public duties incumbent upon it."

For all practical purposes the ruling in the case to which we have just referred controls the question made in the present ·case.   It must be borne in mind that we are considering only the question of the right of the landowner to have the remedy of ejectment.   Of course the owner of land who has not been paid for the same is entitled, as a matter of right, unless his ·claim has been defeated by some act or omission on his part, to be paid for the use of such land, whether such use was authorized or unauthorized by him, and "the landowner is entitled to ·compensation for his property, and this must be ascertained and paid to him before the corporation is vested with the complete right to hold and enjoy his property as its own." Mr. Justice ·Cobb, in the opinion referred to, cites a number of authorities ·directly in point, to sustain the proposition laid down in that· part of his opinion from which we have quoted, and it would really seem to be a work of supererogation to add further citations.   We will, however, briefly refer to some other adjudicated cases clearly establishing the proposition that, under circumstances such as are involved in the present case, the landowner, while being entitled to the same rights to collect the purchase-price of his land as exist in all other cases, is not entitled to the remedy of ejectment to regain possession of the land on which the railroad-track is located.   Indeed some of the authorities, while denying this remedy, go to the extent of declaring that the court will frame a decree so as to protect him in preference to other creditors.

In the argument here counsel for the plaintiff in error asked leave to review such of the decisions of this court as seemed to ·conflict with the doctrine that the landowner did not have a remedy by ejectment in cases where the circumstances were similar to those present here, among them the cases heretofore referred to as having been cited by counsel for the defendant in ·error.   It is not necessary, in our opinion, so far as the decision

of the question involved in the present case is concerned, to review the cases cited by the defendant in error. In all of those to which reference has been made, the facts were that the railroad company entered into possession of the land without the consent of the owner. What the law may be as applicable to cases of that character is a question with which we are not now concerned, as it is not present for consideration. In the most excellent and exhaustive brief of counsel for the plaintiff in error many very strong authorities supporting his contention have been collected. Some of these and other cases we will briefly note. The Supreme Court of Alabama, in 84 Ala. 109, speaking through Stone, C. J., on the question of the right of a party to recover damages for the injury done to her freehold by taking a right of way for a railroad, says: "It is contended for the appellee that, by permitting the railroad company to construct its road and operate it without interference, complainant has estopped herself from now asserting her right to compensation for the right of way. There is no principle of estoppel against this claim, considered as a mere demand for damages for the right of way. If she was seeking to evict the corporation there might be something in the objection. That is not the purpose of this suit." The Supreme Court of Arkansas, in 31 Ark. 494, ruling on the question of the remedy of a landowner to have compensation from a railroad company which had located its right of way on his land, says that "the statutory remedy in favor of the landowner was exclusive, and he could not maintain ejectment for land appropriated for a right of way." Further, "if the appellee was not confined to the statutory remedy, as it seems from the authorities he was, he should, in justice, be required to resort to some remedy that would give him the value of his land and leave the company in the use of the easement." The Supreme Court of Colorado, on the same question, rules as follows: "If the railway company, without right, enters upon the land of a citizen who is vested with the exclusive right of possession, and attempts to construct its road-bed over the same, the citizen may procure its expulsion by an action of ejectment, provided he does not acquiesce in the possession so taken, or, by

affirmative acts, laches or other conduct, place himself and the railroad company in such a position as to make it inequitable for him to insist upon a restoration of the possession. Conduct of the character mentioned would limit his recovery to the value of the land taken." 14 Colo. 327. Similar rulings are made in 76 Ill. 522. In 125 Ind. 476, it is ruled, that where the owner stands by without objection until the rights of the public and third parties have intervened, he may maintain neither ejectment nor injunction, but may resort to an action for damages. And in 31 La. Ann. 924, it was ruled that, as a railroad was a quasi-public work, one who permitted without complaint a railroad company to use his land and construct its road can not thereafter reclaim it, free from the servitude he has permitted to be imposed on it; and while this presumed waiver is a bar to an action to dispossess the company, the owner is not deprived of his action for damages for the value of the land. The courts of many other States have ruled the same principle. See 72 Me. 95; 37 Md. 238; 108 Mass. 214; 41 Mich. 336; 57 Mo. 265; 21 Neb. 372; 13 Barb. (N. Y.) 646; 66 N. C. 540; 18 Ohio St. 169; 33 Vt. 511. In 158 U. S. 11, Mr. Justice Shiras, delivering the opinion of the court in the case of Roberts v. Northern Pacific Railroad, uses this language: "So, too, it has been frequently held that if the owner, knowing that a railroad company has entered upon his land, and is engaged in constructing its road without having complied with the statute requiring either payment by agreement or proceedings to condemn, remains inactive, and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages." For authority he cites 7 Dana, 276, and other reported cases. The English courts have recognized the same doctrine as correct. In 17 Beavan, 60, where a canal was located through certain land, it was "held in equity that A., having thus sanctioned the formation of the canal, was not entitled to retake possession, but only to fair compensation." And in the case of Doe v. Railway Co., 71 Eng. C. L. Rep. 525, it was held: "Even if the effect of the expiration of the three years

were to make it impossible, under the clauses of the act, to take proceedings for ascertaining the amount of compensation, such effect has arisen from the neglect of the owner of the land; and he can not, by his own neglect, make wrongful that possession of the land by the company which was rightful when they made their entry. We are therefore clearly of opinion that, if the original entry was lawful, the present possession was lawful, and that this ejectment can not be sustained."

In our opinion the plaintiff was not entitled to maintain an action of ejectment against the railroad company in the court below, nor recover possession of the land sued for; he having consented to the entry of the company with the knowledge that it was to be used as part of the right of way of the railroad company. This is the only question which we have to decide in relation to his right. It will be time enough to consider his right to compensation in a different form of action when that question is made.

2. The second ground of demurrer is, that any cause of action which plaintiff may have had is barred by the statute of limitations, as appears on the face of his petition. We are of opinion that the court did not err in overruling the demurrer on this ground. Even if the original notes taken by the plaintiff in his contract to sell the land were barred by the statute of limitations, that fact in no way could affect the merits of the case presented by the petition. Under the action of ejectment. the question is one of title and not one of limitation of the right of action on an alleged debt. The petition in this case sought. to recover possession of the land on which the company entered and constructed its road by agreement and with the consent of the defendant in error; and whatever may be the rights of the owner to recover the compensation agreed on, it must be held that, for the reasons stated, he can not now revoke the consent he gave to such appropriation of the land, nor disturb the possession to which he consented with a knowledge of the use to which it was to be appropriated, and the court erred in overruling the demurrer.

*Judgment reversed. All the Justices concurring.*