## MURPHY *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. Although it was an issue as to whether or not a certain strip of land was a part of the right of way of a railroad company prior to 1884, or was a public road and being worked by the county authorities as such, the court did not err in excluding the following evidence offered by the plaintiff, who insisted that the strip of land was a public road: "Prior to 1884 I saw work being done on that road [the road claimed by plaintiff in his pleadings to have been a public road prior to 1884]. It was being done by people in the garb of convicts, some of them with stripes on, working there with pick and shovel, and men with guns on their shoulders." The mere fact that the people who were seen working on the strip of land were in the garb of convicts was not evidence of the fact that it was a public road and that the work was being done by the public authorities of the county, inasmuch as convicts at that date were leased to private parties and it would have been competent, under the law, for the lessees to have employed the convicts in the labor at which they were seen upon private property.
2. The court did not err in admitting in evidence a map of the City of Atlanta, over the objection that "said map was not one made by the City of Atlanta but by private engineers," it appearing that the map was made by the engineers under contract with the city, that it was correct, and that the city had accepted it as the city map.

3. The width of the right of way of the railroad company being in issue, it was competent for the railroad company to prove that a person who had formerly owned the land of which the strip in question was a part, and who would have been the owner of the strip also unless the same had been acquired by the railroad company as a part of its right of way, said, while in possession of the remainder of the land, that the right of way extended a distance of 50 feet on each side of the center of the railroad, which would have embraced the strip of land in controversy.

4. The court did not err in defining possession which might be the foundation of prescription, in the following charge to the jury: "If there were tracks on the adjoining land and trains of cars were run on them, and these things, when taken in connection with the acts done on the 20-foot strip, would indicate that a railroad was being conducted there and that the railroad was claiming this 20-foot strip as a part of its right of way, and this was so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another, this would be possession."

5. It was not error for the court to charge: "The deed from Samuel Thomas and Thomas S. Ryan to the defendant, dated October 29, 1905, conveys to the defendant the right of way of said railroad between Whitehall street and Simpson street, and that would give color of title to a right of way 100 feet wide, 50 feet on each side of the center of its main line, provided you believe from the evidence that the Monroe Railroad and Banking Company laid out its right of way 100 feet wide, 50 feet on each side of its main line, and that it and its successors maintained the right of way between Whitehall street and Shelton street that width by keeping it clear of trees and undergrowth up to the time said deed was executed." *Harriss* v. *Howard*, 126 *Ga.* 325 (55 S. E. 59).

6. The court did not err in refusing a request to give in charge the following: "Any uninterrupted use by the public generally of lands as a roadway for a period of time extending through 20 years, accompanied by acceptance by public authorities, gives a prescriptive right to the public to such road or highway." This charge was ambiguous, being susceptible of two constructions, one laying down the principle that the "acceptance" by the public authorities should be co-extensive with the user by the public and continuous throughout the period of 20 years; while under another construction of the request to charge, uninterrupted user by the public for 20 years and acceptance by the public authorities at any time would be sufficient. The court might have legitimately construed the request in either of the two ways mentioned. His charge as given sufficiently covered the first of these constructions, and a charge upon the principle involved in the other construction was not distinctly invoked by the request.

7. The other requests to charge, so far as they were legal and pertinent, were covered by the general charge. No error is shown in the other rulings of the court complained of.

SEPTEMBER 30, 1910.

Equitable petition.     Before Judge Pendleton.     Fulton superior court.     June 5, 1909.

*Tye, Peeples & Jordan,* for plaintiff.

*Dorsey, Brewster, Howell & Heyman,* for defendant.

BECK, J.     The dispute between the parties in this case is over a strip of land 20 feet in width and about 1,381 feet in length, extending from Glenn street on the north to Shelton street on the south, in the City of Atlanta, the issue being as to whether the same constitutes the eastern edge of a 100-foot right of way of the defendant railroad company or the western third of a 60-foot public road for said distance.     The plaintiff, in 1881, acquired title to the lands lying east of and abutting on the strip of land in dispute. He alleged, that at that time this 20-foot strip was a road traveled by the public, and had been so used for more than twenty years; that in 1884, upon petition of citizens, the commissioners of roads and revenues of Fulton county passed an order formally opening and accepting the same as a public road; that upon the passing of this order the petitioner and other abutting landowners on the east, desiring that the road in front of their property should be 60 feet in width, dedicated an additional 40-foot strip for that purpose, adjoining said 20-foot road; that the county authorities took charge of and worked the entire 60-foot road; and that the same has ever since been a public road.     A short time prior to the bringing of this suit the defendant railroad company began changing the grade of the 20-foot strip in question and laying its tracks thereon, and the plaintiff filed suit to enjoin any further interference with the alleged 60-foot road in front of his lands and the use of any portion of same by the defendant as its right of way.

The defendant denied the plaintiff's contentions, and claimed: that its predecessor in title, the Monroe Railroad & Banking Company, some time prior to 1845 duly acquired title by contract to a 100-foot right of way which included the 20-foot strip in controversy, built its line of road thereon, and maintained said 100-foot right of way until, in 1846, the same was sold to the Macon & Western Railroad Company; that the last-named company kept the said right of way 100 feet wide, clean of all growth, and used the same to operate a railroad thereon, placed telegraph poles and mileposts, dug ditches, built embankments, etc., until it was succeeded by the Central Railroad & Banking Company in 1873;

that the Central Railroad & Banking Company used and maintained said 100-foot right of way in the manner above stated until succeeded by this defendant in 1896; and that this defendant has ever since been in continuous, uninterrupted, and peaceable possession of said strip and right of way until the filing of this suit, operating its railroad thereon, keeping the same clear of obstructions, planting poles and posts, grading, and in various other ways using said right of way, including the 20-foot strip in controversy, for more than seven years prior to the bringing of this suit.

The jury returned a verdict for the defendant. The plaintiff's motion for a new trial was overruled, and he excepted.

1-5. The rulings made in the first five headnotes do not require elaboration.

6. It is complained that the court erred in refusing a written request to give in charge to the jury the following: "Any uninterrupted use by the public generally of lands as a roadway for a period of time extending through 20 years, accompanied by acceptance by public authorities, gives a prescriptive right to the public to such road or highway." We do not think that the failure of the court to instruct the jury in the language of the request was error. It is manifest that the charge which the court refused to give is ambiguous. It is susceptible of two constructions. First, it might be construed to mean that an uninterrupted use by the public generally of lands as a roadway for a period of time extending through 20 years, accompanied by acceptance by the public authorities extending through that period of time, from the beginning to the end thereof, would give a prescriptive right to the public to such road. Second, it might be construed to mean that an uninterrupted use by the public generally of the strip of land in question as a roadway for a period of time extending through 20 years and acceptance by the public authorities at any time within that 20 years, even at or near the close of that period, would give a prescriptive right to the public to such road. These two constructions embody very different statements of the law upon the question involved. If the first construction which might have been placed upon the written request was the statement of the law desired by counsel offering the request to charge, then the principle embodied in the request was sufficiently covered by the charge as given; and as the court might fairly have placed this construction

upon the written request, he should not be held to have committed error in refusing to give another charge upon a subject which was already sufficiently covered by his charge as given. If counsel had desired a charge laying down the doctrine as stated in the second construction of the written request, he should have framed it in terms more aptly embodying the principle which he sought to have incorporated in the court's instructions.

7. The other requests to charge, so far as such requests were legal and pertinent, were covered by the general charge. No error is shown in the other rulings of the court complained of; and the minor inaccuracies in the statement of the contentions of the parties were not of sufficient materiality to be cause for the grant of a new trial.          *Judgment affirmed. All the Justices concur.*