## CARPENTER v. CONNECTICUT GENERAL LIFE INS. CO.

### No. 869.

Circuit Court of Appeals, Tenth Circuit.
Dec. 18, 1933.

70

James A. Marsh, of Denver, Colo. (Benjamin E. Sweet, of Denver, Colo., on the brief), for appellant.

Paul M. Clark, of Denver, Colo. (L. F. Twitchell, J. H. Burkhardt, and John M. Eckley, all of Denver, Colo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

Appellant brought this action against the insurance company on a policy of accident insurance issued by it to Pierce. From a judgment in favor of the insurance company, the executor has appealed.

The policy contained the following provisions:

"This insurance is against loss resulting from bodily injuries effected directly and independently of all other causes through accidental means (hereinafter called the accident) subject to the following provisions and limitations:

"This insurance shall not cover death * * * or loss caused directly or indirectly, wholly or partly * * * by disease; * * *

"Section 1. Loss of Life. * * * If the accident independently and exclusively of all other causes and within one year results in one of the losses defined in the following schedule, the company will pay the sum specified for such loss; * * * Life * * * The Principal sum."

Insured was a lawyer actively engaged in the practice of his profession. He suffered an attack of angina pectoris in 1926, but recovered therefrom sufficiently to resume his practice. At that time Dr. Carpenter, insured's regular physician, prescribed nitroglycerin tablets. Nitroglycerin lowers the blood pressure, takes the strain off the heart and thus relieves the pain; and it dilates the coronary arteries allowing more blood to pass through them to nourish the heart. From that time on until about September 15, 1930, insured took nitroglycerin tablets. Dr. Carpenter advised insured "not to take too many," and to use them only when he had an attack of pain. Insured purchased a bottle of 100 nitroglycerin tablets approximately every ten days during June, July, August, and the first half of September, 1930.

Appellant introduced evidence of statements made by insured that about September 15, 1930, he purchased through mistake one hundred 1/100 grain hyoscine hydrobromide tablets, and between that date and September 22, 1930, took about 90 such tablets for heart attacks, thinking they were nitroglycerin. On the other hand the evidence of two clerks, employed in the drug store where the purchase was made, showed that insured learned of the error on September 15, 1930.

Dr. Carpenter was called to insured's apartment on the night of September 22, 1930. He found insured nervous, restless, and experiencing hallucinations. During the period from September 22, 1930, to October 10, 1930, insured at times continued to manifest such symptoms, while at other times he appeared to be normal. He carried on his usual professional work at his office and in court every day from September 15 to September 27, 1930.

On September 28, 1930, Dr. Ashley was called in consultation with Dr. Carpenter. Ashley testified that insured's pulse was high, his respiration rapid, and that he was experiencing hallucinations and periods of insanity, and that he diagnosed insured's condition as toxic psychosis caused by hyoscine poisoning.

Dr. Love was called in consultation on October 9, 1930. He testified that insured manifested symptoms of acute heart failure—shortness of breath, dusky skin, bluish nails, and periodic mental aberrations.

Insured was removed to the hospital on October 10, 1930, and placed in an oxygen tent. He died October 14 at the age of 64 years.

Dr. Love further testified that the hyoscine taken by insured brought on an excitement stage, which caused a violent overaction

of the heart, resulting in acute degeneration of the heart, which in turn caused death.

Dr. Ashley further testified that the hyoscine caused insanity, which in turn caused exhaustion and death of the insured.

Dr. Carpenter testified that insured died from hyoscine poisoning, independently of all other causes.

They further testified that the conditions, as disclosed by the autopsy performed on the insured's body, were those ordinarily incident to men of insured's age and not abnormal. In other portions of their testimony they admitted that many of the conditions disclosed were abnormal.

The autopsy protocol disclosed the following: The heart chambers were dilated. The myocardium was soft and flabby, and contained large areas composed of scar tissue. These areas were extremely numerous in the left ventricle. The thickness of the myocardium at the apex of the left ventricle was not in excess of two millimeters. The heart showed a fatty degeneration in many places. There were extensive areas of thickening of the mural endocardium, especially in the apical and arterial cones. The orifices of the coronary vessels were dilated, and such vessels and the entire arch of the aorta had large numbers of sclerotic plaques in the intima. Several of the smaller branches of the coronary vessels were obliterated with blood clots.

The anatomic diagnosis, as set forth in the protocol, was: Fibrous myocarditis; obliteration of the smaller branches of the coronary artery; parenchymatous degeneration of the heart, liver, and kidneys; sclerosis of both kidneys, and generalized vascular sclerosis throughout the entire body.

It stated, as comments on the cause of insured's death, that there had existed a relative insufficiency of the myocardium for a long period prior to his death, and that under the effect of hyoscine the relative insufficiency became an absolute insufficiency.

The death certificate signed by Dr. Ashley gave toxic psychosis from hyoscine poisoning as the cause of insured's death, and cardio renal vascular disease as a contributory cause of his death.

The hospital records signed by Dr. Love stated that both the provisional and final diagnosis were that insured had myocarditis and coronary disease, and that the cause of his death was myocarditis and coronary disease. It further stated that insured was evidently suffering from an overdose of hyoscine.

Dr. Bluemel, a specialist in the treatment of nervous and mental diseases, Dr. Connor, a specialist in internal medicine, and Dr. Arndt, a physician of wide experience, were called as expert witnesses by the insurance company. All of them were familiar with the effects of hyoscine hydrobromide. They testified in substance that hyoscine would not affect the heart, blood vessels, liver, or kidneys, but only the nervous system; that hyoscine is eliminated very readily within 12 to 36 hours after it enters one's system; that death therefrom ensues within 36 hours or a less time after the hyoscine is taken, or not at all; that the condition disclosed by the autopsy was brought about over a long period of time, and was not caused by hyoscine; that the symptoms described by the attending physicians were those generally associated with coronary disease and myocarditis; that in their opinion insured died from arteriosclerosis, coronary disease, and myocarditis; and that the hyoscine in no wise contributed to insured's death.

The court in part instructed the jury as follows:

"If he (insured) sustained an accident, but at the time it occurred he was suffering from a pre-existing disease or bodily infirmity, in this case the heart condition and the hardening of the arteries, and if the accident would not have caused his death if he had not been affected by such disease or infirmity, but he dies because the accident aggravated the effects of the disease or the disease aggravated the effects of the accident, under the express contract of the association they are not liable for the amount of this insurance, because the death in such a case would not be the result of the accident alone independent of other causes, but would be due partly to the disease and partly to the accident, and the contract exempts the defendant from liability under such conditions."

Counsel for appellant urge that this instruction should not have been given, because the medical experts for the appellant testified that the hyoscine poisoning was the sole cause of insured's death, while the medical experts for the insurance company testified that disease of the heart and coronary vessels was the sole cause of his death.

Appellant reserved no exception to the quoted portion of the charge.

Alleged trial errors ordinarily will not be reviewed on appeal, where the trial court's attention was not called thereto by specific objection and exception. Aldridge v. United States (C. C. A. 10) 67 F.(2d) 956, opinion

filed November 27, 1933; Greenway v. United States (C. C. A. 10) 67 F.(2d) 738, opinion filed November 27, 1933.

█ Furthermore there was the statement in the death certificate, and other proof, which would have warranted a finding by the jury that the two causes contributed to insured's death.

The instruction is based on the principle laid down in National Masonic Acc. Ass'n v. Shryock (C. C. A. 8) 73 F. 774, which has been cited with approval in Ryan v. Continental Casualty Co. (C. C. A. 5) 47 F.(2d) 472; Ætna Life Ins. Co. v. Allen (C. C. A. 1) 32 F.(2d) 490; Kerns v. Ætna Life Ins. Co. (C. C. A. 8) 291 F. 289; Ætna Life Ins. Co. v. Ryan (C. C. A. 2) 255 F. 483; Illinois Commercial Men's Ass'n v. Parks (C. C. A. 7) 179 F. 794.

The trial court refused to give the following instructions requested by appellant:

"No. 3. You are instructed that any infirmity or impaired condition of the organs of Charles H. Pierce which were such only as is the natural or usual accompaniment of a man of his age, would not be a contributing or concurring cause of his death and would not prevent a recovery by the plaintiff in this action."

"No. 4. If you should believe that Charles H. Pierce accidentally took hyoscine hydrobromide poison, which directly caused his death, then the right of the plaintiff to recover should not be denied, because you might also believe from the evidence that Charles H. Pierce was at the time suffering from a pre-existing disease, unless you should also believe that such pre-existing disease concurred with the accident to cause death and that death would not have resulted but for the existence of such disease."

"No. 5. You are instructed that although you may believe that Charles H. Pierce was at the time the plaintiff contends that he accidentally took hyoscine hydrobromide, suffering from arteriosclerosis, still if you believe that this arteriosclerosis was only such as is the natural and usual accompaniment of a man of his age, then you should not consider such arteriosclerosis as a contributing or concurring cause in his death."

"No. 6. If you believe that the sclerotic condition in the body of Charles H. Pierce was only such as was the natural or usual accompaniment of a man of his age and that this condition rendered him more susceptible to the effect of the poison, then such condition would not be a contributing or concur-

ring cause in his death, and would not defeat a recovery by the plaintiff in this action."

"No. 9. You are instructed that the medical witnesses for plaintiff and defendant agree that the accidental poisoning and disease did not concur to cause death. The medical witnesses for plaintiff testified that death resulted from the accidental poisoning independent of all other causes. The medical witnesses for defendant, while denying that death resulted from the hyoscine hydrobromide poisoning, testified if the hyoscine hydrobromide had been taken in such quantities and at such times as to ordinarily cause death, the existence of any pre-existing disease such as they claim Charles H. Pierce had, would not have had any effect whatever in producing death."

█ A requested instruction is properly refused unless it ought to have been given in the very language requested. Blanton v. United States (C. C. A. 8) 213 F. 320, Ann. Cas. 1914D, 1238; American Surety Co. v. Blount County Bank (C. C. A. 5) 30 F.(2d) 882; Brooks v. Marbury, 11 Wheat. 78, 94, 6 L. Ed. 423.

Requested instructions Nos. 3, 5, and 6 are predicated upon the proposition that physical impairment, normally and usually incident to advanced age, is not a disease. This principle is supported by two cases: Lickleider v. Iowa State Traveling Men's Ass'n, 184 Iowa, 423, 166 N. W. 363, 168 N. W. 884, 3 A. L. R. 1295, and Moon v. Order of Commercial Travelers of America, 96 Neb. 65, 146 N. W. 1037, 52 L. R. A. (N. S.) 1203, Ann. Cas. 1916B, 222.

We doubt the applicability of the principle to the undisputed facts in the instant case. Insured had an attack of angina pectoris in 1926. The autopsy disclosed arteriosclerosis, coronary thrombosis, scar tissue in the heart, a substantial thinning of the myocardium at the apex of the left ventricle, thickening of the mural endocardium, and sclerotic plaques in the intima of the coronary vessels and in the aorta. This is not only a condition of disease, but a serious one. As stated by the court in Order of United Commercial Travelers v. Nicholson (C. C. A. 2) 9 F.(2d) 7, 14:

"It is common knowledge, of which this court can take judicial notice, that arteriosclerosis is a frequent cause of death, and that one who is in an 'advanced state of arteriosclerosis,' * * * is not only diseased, but very dangerously diseased."

But even though the principle announced in the Moon and Lickleider Cases is applica-

ble, the instructions were properly refused in the form requested.

An instruction which is susceptible of two constructions is erroneous because it has a tendency to confuse and mislead the jury. Murphy v. Central of Ga. R. Co., 135 Ga. 194, 69 S. E. 117; Belt v. Goode, 31 Mo. 128; Stewart v. Demming, 54 Neb. 7, 74 N. W. 265; Gordon v. Richmond, 83 Va. 436, 2 S. E. 727; Virginia Cent. R. Co. v. Sanger, 15 Grat (56 Va.) 230.

Had instruction No. 3 been given in the form requested, the jury might have construed it to mean that the court assumed, as an established fact, that the infirmity or impairment of the organs of insured were only the natural or usual accompaniment of a man of his age. It was not only ambiguous, but subject to an erroneous interpretation.

An instruction is erroneous which singles out and gives undue prominence to a single fact to the exclusion of other important facts. Rio Grande Western R. Co. v. Leak, 163 U. S. 280, 288, 16 S. Ct. 1020, 41 L. Ed. 160; Grand Trunk R. Co. v. Ives, 144 U. S. 408, 433, 12 S. Ct. 679, 36 L. Ed. 485; Urban v. United States (C. C. A. 10) 46 F. (2d) 291, 293; Faraone v. United States (C. C. A. 6) 259 F. 507, 510; Boston Elevated R. Co. v. Teele (C. C. A. 1) 248 F. 424, 429. Under this rule instructions Nos. 5 and 6 were objectionable because they were limited to sclerosis, and failed to include the other serious conditions of insured, as disclosed by the evidence, such as plaques in the coronary arteries, scar tissue in the heart, thickening of the mural endocardium, and a thinning of the myocardium at the apex of the left ventricle. This omission would naturally have led the jury to believe that the conditions not referred to were unimportant.

Furthermore, the court in its general charge stated that it was the theory of appellant "that the hardening of the arteries and other conditions of his (insured's) heart found at the autopsy were not sufficient to have caused his death, being conditions incident to his age."

An instruction is improper which assumes the existence of a fact which under the evidence is an issue for the jury. Northern Cent. Coal Co. v. Barrowman (C. C. A. 8) 246 F. 906; Inlet Swamp D. Dist. v. Gehant, 286 Ill. 558, 122 N. E. 127.

Requested instruction No. 9 assumed that the hyoscine was taken accidentally, whereas there was evidence that the insured continued to take the tablets for seven days after he discovered they were hyoscine. Furthermore it erroneously assumed that all the evidence of appellant's experts was to the effect that hyoscine poisoning was the sole cause of insured's death, whereas the death certificate signed by Dr. Ashley, and the hospital record signed by Dr. Love, were to the contrary.

We must assume that the other assignments of error not presented in either the oral argument or brief of appellant have been abandoned. Allen v. Hudson (C. C. A. 8) 35 F.(2d) 330; United States v. McCandless (C. C. A. 3) 61 F.(2d) 366; Travelers' Ins. Co. v. Bancroft (C. C. A. 10) 65 F.(2d) 963.

Affirmed.