## 34044.  GEORGIA RAILROAD & BANKING COMPANY
*v.* KNOX.

DECIDED JUNE 4, 1952.

*Stevens & Stevens,* for plaintiff in error.

*Knox & Neal,* contra.

WORRILL, J. (After stating the foregoing facts.)   The record

presents for determination the sole question, whether or not the evidence sustained the verdict. Goldie Stewart testified on direct examination as follows: "On or about June 24, 1950, in the early part of the afternoon, I recall having heard a locomotive of the Georgia Railroad in that area. . . they were shifting there. That was around 2 or 2:30 in the afternoon, right along there somewhere. . . I saw the locomotive there. It was this local, with a steam locomotive. I saw it come out of the cut. . . From the time the train passed by there until the time I went to see where the fire was at I would say was about ten or fifteen minutes, after the train came out of the cut. . . I went across the hill to the fire, and the fire was coming up the hill, I would say about 200 yards from the Pylant crossing, up above the cross roads, going on across towards Mr. Knox's house up in the field. The wind was blowing pretty peart at that time, and the wind was coming from the crossing kind of, and going straight over towards Mr. Knox's house. . . The wind was blowing towards his land from the railroad. I saw the fire burning, and it was burning towards the house on Mr. Knox's place. . . As to where that fire was burning when I first got there to see it, and whether or not it was burning close to the railroad track—yes, when I seen it it came out of a little funnel like from the railroad. . . As to where that funnel started from or was located with respect to the railroad track, and whether or not it was on the right of way—yes, sir, right on the edge of the right of way . . it started there on the right of way. . . I said the fire started out from a small place, and then it just funneled out. I would say it had burned a place there about ten feet when it got up to that fence, and it was just burning on the right of way, just coming on over that way and on his property. . . That fire burned right on across Mr. Knox's place. . . I would say there was around an area of 100 acres of land burned over there on Mr. Knox's place. . . It was plumb dry weather there when this fire occurred. . . There was plenty of grass and weeds and other stuff on the right of way there, right on up to the ends of the crossties, and all of that stuff was dry. . . I said this fire burned up almost all of his small trees on the land. . . It started on the right of way of the railroad there." On redirect examination, Stewart

testified: "As to its speed when this train came out of this cut down there—it was just picking up, getting up its speed; it had stopped up there and it was getting up its speed, you know, and it was pulling, you know. I have seen locomotives run on the railroad since I was big enough to know what they were. And when they are pulling like that they throw out more sparks than they do when they are just running along."

Earl Hudson testified: "My opinion of the difference in the market value of that land with that timber on it before the fire and after the fire is that the land was worth $100 an acre before the fire, and that it wasn't worth over $50 after the fire went through it, so far as the growing timber that was on it is concerned."

G. B. Hartley testified: "I would say that the difference in the market value of that property between the time just before that fire and right after the fire took place, in my opinion I would say that the fire cut the values half in two. I don't hardly know how to value the land now, but I imagine the land was worth $90 to $100 an acre before the fire."

G. G. Sale testified for the defendant as follows: "I am employed by the Georgia Railroad, and was so employed on the 24th of June last year, serving in the capacity of a locomotive engineer. I was operating an engine from Atlanta to Augusta on the 24th of June last year, and we reached the vicinity of the Knox farm about 3:35 o'clock in the afternoon. . . At that time my engine was not throwing sparks. My engine was equipped with a standard spark arrester. If it had been throwing sparks, I would have known it. I did not see a fire in the vicinity of the railroad on that occasion. If there had been a fire there, I think I would have seen it. . . But usually when you are starting off it takes more power then than any other time. And when you are taking that much more power, the greater tendency is for the sparks to come out of the smokestack. And if the sparks come out, there would be a tendency there to set something on fire, or a possibility it might set something on fire."

R. A. Attaway testified: "The meshes of this arrester here are approximately one-eighth of an inch wide. It is possible for a cinder to get through that mesh there if it is beat down that

small. It is possible for a live cinder to get through that mesh one-eighth of an inch in size by a half an inch long. But this netting is put in there to beat it up before it gets out of this front end; it hits on the front there and it beats it up before it goes out. But one-eighth of an inch is as large as they can get through there though."

"It is always incumbent on the plaintiff to make proof that the fire was communicated by the locomotive of the defendant. But few cases will occur, however, where the fact that the fire was communicated is susceptible of direct proof. Consequently such proof must be more or less circumstantial. The evidence, however, must be sufficient to establish a reasonable inference that the fire originated from sparks or fire emitted or thrown out by the locomotives of the company." *Gainesville, Jefferson &c. R. Co.* v. *Edmondson,* 101 *Ga.* 747, 751 (29 S. E. 213). "Evidence to the effect that a locomotive engine of the defendant passed near the plaintiff's property, and showing circumstantially that within a few minutes thereafter a fire arose in the grass and other combustible matter on the defendant's right of way at a point which the engine had passed, and that there was no other source from which the fire likely originated, was sufficient to authorize a finding that it was caused by a spark or sparks emitted from the engine as alleged." *Louisville & Nashville R. Co.* v. *Studdard,* 34 *Ga. App.* 570, 571 (2) (130 S. E. 532). In the instant case, the evidence that the fire was seen a few minutes after the locomotive had passed the place where it occurred, that the wind was blowing from the railroad towards the plaintiff's land, that the defendant's right of way was covered with highly combustible material, and that the weather was extremely dry, was sufficient to authorize the finding that the fire was communicated by the locomotive of the defendant, since there is nothing to indicate that the fire could have originated from any other source. *Southern Railway Co.* v. *Herrington,* 128 *Ga.* 438, 440 (57 S. E. 694). It was shown by the defendant's witness that, even though the engine was equipped with a spark arrester, sparks "one-eighth of an inch in size by a half an inch long" could be emitted. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*