35902. GEORGIA RAILROAD & BANKING CO. *et al. v.* FLYNT.

Decided February 23, 1956—Rehearing denied March 9, 1956.

516

518

· *Hawes Cloud, Weldon C. Boyd,* for plaintiff in error.

*Randall Evans, Jr., A. R. Barksdale, Harold Richards,* contra.

QUILLIAN, J. 1. The defendant in error, Wales T. Flynt, will be referred to in this opinion as the plaintiff, and the plaintiff in error Georgia Railroad & Banking Company, will be referred to as the defendant, or the railroad company.

The only general ground of the motion for new trial insisted upon in this court is that the verdict was without evidence to support it.

It is the position of the defendant that its engine was so constructed and operated that fire could not have been communicated to combustibles, grass, weeds, and bushes upon its right-of-way, and that if it was shown by any evidence that combustible substance was upon lands adjacent to and along its railroad tracks there was no proof that such substance was upon its right-of-way, since there was no evidence as to the width of its right-of-way.

As to the first of these contentions it must be observed that according to some testimony of one of the defendant's witnesses cinders or sparks of fire could be emitted from the engine. There was evidence that immediately after the engine passed the fire began. Coals were later found at about the same place on the defendant's tracks. So, unlike the case of *Gainesville, Jefferson &c. R. Co.* v. *Edmondson,* 101 *Ga.* 747 (2) (29 S. E. 213), there was more than a suspicion that the fire that damaged the plaintiff's property came from the defendant's engine.

*Georgia R. & Bkg. Co.* v. *Knox,* 86 *Ga. App.* 255 (71 S. E. 2d 250) is more in point here. In that case facts similar to those appearing from the record in this case were held sufficient to support a verdict for the plaintiff.

As to the width of the defendant's right-of-way we are impressed, that since according to the plaintiff's evidence, the fire first appeared about five feet from the defendant's tracks it could reasonably be assumed that it was upon the right-of-way. Of course, there are railroad yards in which a railroad company's right-of-way may not extend that distance from its tracks, but the fire in this case originated in a rural area. It could hardly be assumed that the company operated its line of railroad without any right-of-way or one narrower than five feet from its tracks. But regardless of whether such assumption could be indulged and conceding that from the evidence that the fire so close to the tracks was not upon the right-of-way, the evidence sufficiently established that the defendant used a considerably broader strip of land as its right-of-way. The fact that the defendant did actually use and exercise dominion over a particular area as its right-of-way was evidence that it was in possession of the same, and under the duty to keep it reasonably clear of debris and combustibles. Indeed bare possession of real estate is

some evidence of ownership. *Murphy* v. *Central of Ga. Ry. Co.*, 135 *Ga.* 194, 195 (4) (69 S. E. 117).

If the area occupied and used by the defendant was not its right-of-way, it would still be under the duty while exercising control and dominion over it to keep it reasonably clear of combustible matter.

The defendant also contended that there was no legal proof of the amount of the plaintiff's damages. We are of the opinion that the plaintiff's uncontradicted testimony with sufficient clearness and accuracy showed the amount of damage to his property.

2. The fourth ground of the motion for new trial complains that over the timely objection of the defendant the court permitted the plaintiff sworn as a witness in his own behalf to testify: "In my opinion the timber land just prior to the fire was worth about $140 an acre and just after the fire the value was around $30 an acre. Aside from the timber land that was burned over, the fire damaged around 40 acres of improved pasture land. I would say the reasonable value of that land just prior to the fire was around $70 an acre and in my opinion the reasonable value of it immediately after the fire was around $30."

The objection to the evidence was that the proper foundation for its admission had not been laid, and the special insistence of the defendant is that the testimony should have been excluded, because the plaintiff obtained his information as to the market value of his lands and the diminution of their value from other people.

There was evidence that the plaintiff had for years owned the lands in question, knew the costs of improvements made on them, had walked over them since they were damaged, was familiar with values of lands in the vicinity and had consulted other people as to the fair market value of the lands and the question of damage done to them. The evidence was clearly admissible. Code § 38-1709; *Southern Railway Co.* v. *Thacker*, 50 *Ga. App.* 706, 707 (3) (179 S. E. 225); *Landrum* v. *Swann*, 8 *Ga. App.* 209 (1) (68 S. E. 862).

This case bears no factual resemblance to the case of *Central of Ga. Ry. Co.* v. *Miller & Lipschitz*, 26 *Ga. App.* 210 (106 S. E. 15) where the witness simply undertook to relate statements made by other persons, and offered no opinions of his own.

3. The fifth ground of the amended motion for new trial excepts to the trial judge's refusal to declare a mistrial because the plaintiff while testifying as a witness in his own behalf testified: "I think the railroad burned it over five or six times since I owned it." The contention is that the evidence was not responsive to a question propounded on cross-examination, was prejudicial to the defendant and that its effect could not be eradicated by instructions that the jury disregard it. The witness was at the time being examined as to the time and origin of a fire occurring subsequently to that which the plaintiff alleged was communicated to his property from the defendant's locomotive.

The offending statement of the witness must be considered in its context. The specific question propounded to the witness was: "Didn't the Battle place get burned by fire in June of 1952?" His entire answer as it appears from the record was "I don't know. I think the railroad burned it over five or six times since I owned it." While not directly elicited the answer does not happen to be wholly unresponsive to the question asked the witness by defendant's counsel. It was not made to appear by the objection or the motion that the fires referred to by the witness did not also occur subsequently to the fire he contended was communicated from the defendant's engine to his property. The objection and motion contained in a single sentence was "I object to that and move that it be stricken and I move for a mistrial, it was utterly unresponsive."

Whether the objection and motion were themselves insufficient to raise the question as to the admissibility of the statement as evidence and as to its prejudicial nature, see *Owens* v. *State*, 32 *Ga. App.* 417 (123 S. E. 919). However, if it be conceded that the evidence was both inadmissible and prejudicial, its admission did not necessarily require that a mistrial be ordered. The trial judge promptly excluded the evidence and explicitly instructed the jury not to consider it "at all." Under authority of *Worthy* v. *State*, 184 *Ga.* 402 (1) (191 S. E. 457), we are of the opinion that the trial judge did not err in denying the motion for a mistrial.

We are confirmed in our opinion by the fact that the plaintiff offered evidence of a somewhat similar nature to that upon which it predicated the motion for mistrial. "They had a fire down at

the creek and Mr. Newsom, I believe it was, was talking about that, in fact, there had been a good many fires along in there and he said something to us about fighting them. That is the way I knew that they burned the right-of-way. We had said something about it, but I didn't know exactly when it was done. He said there had been a good many fires down there around the railroad track. Mr. Newsom said because of that he had burned off the right-of-way, which was down there by the creek."

4. The sixth ground of the motion for new trial excepts to admission over timely objection of the defendant of a certified copy of a deed and plat made by the defendant railroad to the State Highway Department offered for the purpose of showing the width of the defendant's right-of-way.

The objection interposed to this evidence was that it was of a secondary nature, and the foundation for its introduction had not been laid. However, the defendant's counsel limited the scope of the objection by stating "Based on his statement as I understand he is trying to prove the width of the right-of-way by deed from the Georgia Railroad to the State Highway Department. It is not a question of a certified copy. We don't think the foundation has been laid for the introduction of any secondary evidence. We think the highest and best evidence of the width of the Georgia Railroad right-of-way is a deed from somebody into the railroad."

Likewise the exception contained in the ground of the motion for new trial assigns error because the highest and best evidence was "The original instrument or instruments, particularly that one or those under or by which movants acquired their right-of-way."

The record is silent as to whether the railroad company acquired the right-of-way by deed or other instrument. The right-of-way could have become the railroad company's property by prescription or oral gift as well as by deed or condemnation. Code § 85-409; *Kerlin* v. *Southern Bell Tel. &c. Co.*, 191 *Ga.* 663 (13 S. E. 2d 790); *Murphy* v. *Central of Ga. Ry. Co.*, supra; *Central of Georgia Ry. Co.* v. *Standard Fuel Supply Co.*, 144 *Ga.* 92 (1) (86 S. E. 228); *Tift* v. *Atlantic Coast Line R. Co.*, 161 *Ga.* 432 (131 S. E. 46); *Atlanta, Knoxville &c. Ry. Co.* v. *Barker*, 105 *Ga.* 534 (1) (31 S. E. 452). The ground does not show error.

5. The seventh ground of the motion for new trial is one based upon a similar objection and exception to the admission of evidence of the same nature as that referred to in the sixth ground and is controlled by the same principles pronounced in disposing of the former ground.

6. The eighth ground of the motion for new trial complains that the court charged the jury that the measure of the plaintiff's damages was diminution in the value of his realty, without instructing them separately as to each element of damages to the realty, viz. the damage to the fences, timber and pasture lands.

We have given careful consideration to the cases cited by the defendant. *Tallulah Falls Ry. Co.* v. *Taylor*, 20 *Ga. App.* 786 (93 S. E. 533) was a suit for personal injuries in which the plaintiff sued for several items of damages, permanent impairment of ability to work, pain and suffering and expenses incident to treatment of injuries. It was obviously necessary for the court to charge on each item of damages for the recovery of which the suit was instituted.

*Southern Ry. Co.* v. *O'Bryan*, 112 *Ga.* 127 (1) (37 S. E. 161) deals with a suit in which the elements of damage claimed by a passenger negligently carried beyond her destination were humiliation, fright, and illness induced by exposure. It is apparent that different rules were to be used by the jury in arriving at the amount of the plaintiff's several items of damages. Humiliation could be measured only by the enlightened conscience of impartial jurors; sickness was a matter that might involve the loss of time, and incurring medical expense. It is apparent that without request, it was the duty of the trial judge to so instruct the jury.

But the last two cases cited are more related to the question raised in the exceptions to the charge contained in this ground of the motion for new trial.

Headnote 4 in *Southern Ry. Co.* v. *Burch*, 66 *Ga. App.* 270 (17 S. E. 2d 601), reads "Whether the cause of action be laid as for diminution in the values of the lands or as for the quantum of damages resulting in the burning of the specifics growing or spread over such lands, the measure of damages for *fencing* injured or destroyed is, as set out in *Central Railroad & Banking Co.* v. *Murray,* . . . . for the 'cost of restoring it and making

its condition as good as that in which it was when injured or 'destroyed'."

*Central Railroad & Banking Co.* v. *Murray*, 93 *Ga.* 256 (4) (20 S. E. 129) holds: "For fencing injured or destroyed, the recovery should be measured by the cost of restoring it and making its condition as good as that in which it was when injured or destroyed."

In both cases the court was dealing with cases in which recovery was sought for damages done to fences and not for diminution in the value of the realty upon which they stood.

We find an unbroken line of authority which makes it perfectly clear that where the damage is to fences, houses and other structures forming a part of the realty upon which they stood, the measure of damages may be for the diminution in the value of the lands.

In the case of *Louisville & Nashville R. Co.* v. *Kohlruss,* 124 *Ga.* 250 (52 S. E. 166) it is held: "The measure of damages for the negligent firing and destruction of the fencing and ornamental trees on the plaintiff's land by the railroad company in the operation of its train was the diminution in value of the premises resulting from the injury caused by such firing."

In *Empire Mills Co.* v. *Burrell Engineering &c. Co.*, 18 *Ga. App.* 253, 256 (89 S. E. 530) the compatibility of the two rules that may be applicable where structures forming a part of the realty are damaged or destroyed is clearly stated: " 'As a general rule the measure of damages in actions for injuries to real property is the difference in value before and after the injury to the premises. . . In some cases the cost of repair or restoration has been adopted as the measure of damages [*Harrison.* v. *Kiser,* 79 *Ga.* 588 (4 S. E. 320), and several other cases]; but in such event the cost of repair must be reasonable and bear some proportion to the injury sustained.' 13 Cyc. 150, 151. 'The value of the property destroyed, or the cost of restoring or replacing such property, is the proper measure of damages for the destruction of buildings, fences, and other improvements, which may at once be replaced, where the exact cost of restoring the property destroyed is capable of definite ascertainment, and where there is no damage to the realty itself.' [Citing numerous decisions]. Of course, if recovery is sought for injury to the freehold itself

by reason of the taking or destroying of the property attached thereto, the measure of damages should be the difference between the value of the land before and its value after the injury. 8 R. C. L. 485, and cases there cited."

And in *Southern Railway Co.* v. *Taylor*, 76 *Ga. App.* 745, 758 (47 S. E. 2d 77) the learned judge who was the author recognized the harmony of the rules in the following language: "If in reading it as a whole the phraseology of headnote 5 is susceptible of the construction which counsel for the defendant placed upon it, then we have this to say, the phraseology is inapt as applied to the facts in that case. In *Wrightsville & Tennille R. Co.* v. *Barrett*, 39 *Ga. App.* 612 (4) (147 S. E. 916), this court said: 'The true measure of damage in a case of this kind is the diminution in the market value of the realty, unless the value of the trees at the time and place of their being felled, plus the incidental damage to the realty, exceeds the diminution in market value of the land; in which event the plaintiff is entitled to claim the higher measure. See *Central R. Co.* v. *Murray*, 93 *Ga.* 256 (20 S. E. 129); *L. & N. R. Co.* v. *Kohlruss*, 124 *Ga.* 250 (52 S. E. 166); *Western & A. R. Co.* v. *Tate*, 129 *Ga.* 531 (59 S. E. 266); *Milltown Lumber Co.* v. *Carter*, 5 *Ga. App.* 344 (2), 349 (63 S. E. 270). The court's instructions on the subject of the measure of damage contained no error as against the defendant.' Therefore, it follows that the court did not err in allowing the amendment adding the second count and requiring the plaintiff, after the evidence was closed, to elect on which count he would rely for a recovery."

. Thus we are forced to conclude that the quoted language of *Southern Ry. Co.* v. *Burch,* supra, is obiter dictum, and if it were not so would be clearly in conflict with earlier cases of this court as well as holdings of the Supreme Court. When the case was previously before this court, *Georgia Railroad & Banking Co.* v. *Flynt*, 89 *Ga. App.* 315, 316 (79 S. E. 2d 377) it was held: "The original petition was based on damages to specifics. An amendment sought to change the damages to diminution of the value of the land. Without objection by either side, the case was tried on the theory of diminution of value, and the court, by charge, submitted to the jury only the issue of diminution of value. Since this action of the court was unobjected to, the petition will

be considered as having been effectively amended so as to strike all measures of damage except as to diminution of the value of the land."

It follows that the only measure of damages for which the plaintiff sought recovery was a diminution to the value of his realty and that the defendant permitted the case to proceed on that theory alone, hence there can be no doubt that was the only measure of damages in reference to which the court could have properly charged the jury. The ground does not show error.

7. The ninth and tenth grounds of the motion complain that the court instructed the jury in reference to the contentions of the plaintiff as to the damage done fence posts and pasture lands on his realty to which he contended fire was communicated from the plaintiff's engine. The special insistence of these grounds was that there was no evidence as to any damage to the fence posts or pasture lands. The premise is incorrect for the reason that the record which it was necessary to carefully peruse in order to ascertain whether the grounds were meritorious reveals ample evidence to support the charge. The plaintiff testified that the fence posts along with the pasture and timber lands were damaged. He gave an opinion of the aggregate damage to his realty which embodied damage to fence posts, pasture and woodlands. The court then instructed the jury as to the assessment of damages to the entire property. The charge did not submit any question to the jury as to the amount of the separate items of damage, but instructed the jury that it was the plaintiff's contention that the realty had been damaged in that his fence posts, pasture and woodlands constituting parts of the realty had been burned. The criticism of the charge is not meritorious.

8. Grounds eleven, twelve and thirteen of the amended motion for new trial contend that instructions were given to the jury submitting issues not made by the pleadings or supported by proof adduced upon the trial. A careful examination of these grounds and equally thorough review of the record constrains us to hold the pleadings submitted and evidence, if believed by the jury, sufficiently supported the plaintiff's contentions of all the issues referred to in the court's charge.

9. The fourteenth ground assigns as error that the court, without request failed to charge, that if a witness knowingly and wil-

fully swear falsely in a material matter, his testimony should be rejected entirely, unless corroborated by the facts and circumstances of the case or other credible evidence.

The ground relates that a named witness materially changed his testimony from that given by him on a former trial of the case as to material matters. The testimony of the witness was material because it related to the vital issue as to whether the fire was in fact communicated from the defendant's locomotive to the plaintiff's property. It was also to some extent inconsistent with the same witness's testimony on the former trial of the case, but the witness explained the inconsistency by explaining that, if he testified differently on the previous trial he was simply mistaken. In the first place the inconsistency was not such, in view of the explanation given by the witness, as to make it apparent that he testified falsely on either trial. Rare it is that the most truthful can after a lapse of months, repeat the material details of an event with complete accuracy. The witness' testimony on a whole seems reasonably consistent.

We remember the case of *Smaha* v. *George,* 195 *Ga.* 412 (3) (24 S. E. 2d 385): "It is not reversible error for a judge, in the absence of a request, to fail to charge to the jury the rule of impeachment, codified in § 38-1806, which provides that the testimony of a witness who shall 'swear wilfully and knowingly falsely' as to a material matter shall be 'disregarded entirely, unless corroborated by circumstances or other unimpeached evidence', where witnesses, though admitting an inaccuracy in their previous depositions with respect to the incidental question whether or not the back or wrapper on the deed in question was attached at the time the instrument was executed, denied any intentional falsity, and sought to explain the discrepancy as due to a failure to refresh their recollection on a matter which was not impressed on their minds, or due to the confusion caused by the circumstances of cross-examination in their previous depositions; and where the nature and character of the testimony is not such as would render the purpose to falsify plainly manifest." The ground does not show error.

10. Ground fifteen of the amended motion for new trial complains that the verdict was so grossly excessive as to evince undue bias, prejudice, and gross mistake on the part of the jury in favor of the plaintiff and against the defendant.

Emphasis is placed on the fact that the damage found by the jury was in excess of the original purchase price of the property, when purchased by the plaintiff some twelve years before the time the damage was done.

The verdict was within the range of the evidence. While the jury was not bound to accept the plaintiff's estimate of the damage done his property, his opinion was not contradicted by proof offered by the defendant. It is generally the province of the jury to decide questions of values and the extent of damages. The cost of the property in a less improved state at the time the plaintiff purchased it some twelve years before the fire was a matter for the jury to consider; it was by no means conclusive or necessarily indicative of its value when damaged. We cannot hold the verdict was as a matter of law excessive.

11. Ground sixteen of the amended motion for a new trial complains that the trial judge having undertaken to charge the provisions of Code § 38-109 which embodies the rules to be applied by the jury in determining where the preponderance of evidence lies omitted to refer to the intelligence of the witnesses and probability or improbability of their testimony.

The rule stated in various forms by our appellate courts is that if the trial judge undertakes to give the Code section in charge to the jury it is error not to instruct them as to any of its provisions applicable to the issues of the case. *Cedrone* v. *Beck*, 74 *Ga. App.* 488 (40 S. E. 2d 388) ; *Fountain* v. *McCallum*, 194 *Ga.* 269 (12) (21 S. E. 2d 610). Learned counsel for the defendant recognized the rule and insist that the provisions of the Code section charged were applicable to the issues of the instant case because the testimony of one of the plaintiff's witnesses evinced a lack of intelligence and was inherently improbable. The witness' version of the matter to which his testimony related was reasonably consistent and probable. He seemed rather dexterous in answering questions propounded to him upon cross-examination, making highly intelligent explanations of facts testified to by him, and of his conduct and motives. The ground does not assert that the testimony of the witness is in conflict with the testimony of more intelligent or creditable witnesses of the defendant, nor is the testimony of the plaintiff's witness alluded to in the ground. The ground does not show error.

12. The seventeenth ground of the amended motion excepts to the court's instructing the jury that if they believed from the evidence that the plaintiff's property was destroyed by reason of the defendant being negligent in the particulars alleged in the petition the plaintiff would be entitled to recover. The principal criticism of the charge was that it in effect instructed the jury that proof by the plaintiff that the defendant was negligent as alleged in the petition and that the plaintiff sustained damages would support a recovery, though the evidence did not disclose that the defendant's negligence was the proximate cause of the plaintiff's damages. The necessity for causal connection between the defendant's negligence and the plaintiff's damages is contained in the very initial phrase of the charge to which exception is taken. That phrase instructs the jury that in order for the plaintiff to recover they must find that the sparks emitted from the plaintiff's engine by reason of certain acts of the defendant: "(a) The defendant was negligent in operating and handling its train so as to allow sparks and embers to be emitted therefrom. (b) In operating its train without same being equipped with a proper spark arrester. (c) In failing to keep its right-of-way clear of highly inflammable material. (d) In allowing the fire to spread from defendant's right-of-way onto your petitioner's property. (e) In failing to exercise ordinary care and diligence in operating its train so as to avoid injury to the property of the petitioner," destroyed the plaintiff's property. The criticised instructions did not contain the words "proximate cause" but were couched in terms more intelligible to a layman than the stereotyped charge generally given on this subject. The charge did instruct the jury that in order for negligence to be actionable it must create the force that is the precipitate cause of the mischief done. This ground is without merit.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*