JOHN BABER and wife, plaintiff in error, vs. JOHN WOODS, administrator, defendant in error.

The returns made by an administrator to the Ordinary and approved by him, are not conclusive. But where the administrator had made his return, and the guardian of minor legatees filed objections to it, and charged mismanagement and unfairness in the return, in this, that the administrator credited himself with Confederate bonds, in which he had invested Confederate notes received before the passage of the Act of the Legislature, authorizing administrators to receive Confederate Treasury notes, and the Ordinary cited the administrator to answer to the charge, and he came into the Court of Ordinary, and made his showing, and the Court of Ordinary, on the hearing, passed an order that said return be disallowed and that the administrator be required immediately to make another return, including in said return good currency instead of the Confederate currency, and no appeal was taken from this judgment of the Court of Ordinary: *Held*, that it became conclusive as to the point in issue, and the administrator will not be heard to set up the same item for loss of Confederate currency in the subsequent return, which he is required to make. If the judgment of the Court on his first return was erroneous, and he was unwilling to be bound by it, he should have appealed from it. Having failed to do so, he cannot now be heard to controvert its correctness.

Administrator's returns. *Res adjudicata.* Before Judge PARROTT. Catoosa Superior Court. March Term, 1869.

Woods was administrator of John Gray, deceased. Mrs. Baber, formerly his widow, was the guardian of John Gray's minor heirs. On the 5th of June, 1866, she, as such guardian, complained to the Ordinary that Woods was mismanaging said estate, and had made no returns, and obtained an order from the Ordinary for Woods to appear and settle with her. In answer to said rule, in August, 1866, Woods made his return, as administrator, and claimed therein as one item for his discharge, $392 53, collected in Confederate currency. Mrs. Baber objected to this return, averring that said sum was collected by Woods, in par currency, and not in said currency. At November Term, 1866, of the Court of Ordinary, this issue was tried, and the Ordinary found and adjudged that said return was incorrect, in so far as related to the currency in which said sum was collected, and ordered Woods to

make, at once, another return, putting good currency, in lieu of Confederate currency. Nothing more was done at that time.

In March, 1869, Woods made another and final return for 1864, 1865, 1866 and 1867, in which he charged himself with a balance of $393, from his first return (the date of which is not mentioned) and discharged himself by various credits, the last of which was, "balance on file, $288," meaning in Confederate currency. To this last return, Mrs. Baber, with her husband, filed a *caveat*, averring¯ that the assets of said estate came into Woods' hands in good currency, prior to the Act of 1863, allowing administrators to take Confederate currency, and because this matter had been adjudicated at said November term, 1866, of the Court of Ordinary, adversely to said Woods.

Upon the trial of this issue, upon the appeal, in the Superior Court, Woods explained his other credits, and testified that he collected said original sum, from one Dalton, in Confederate currency, in 1863, that he funded it in the fall of 1863, and that it perished with the Confederacy. Mrs. Baber testified, that he told her (in 1862, she thought,) that he had in his house every dollar of the funds belonging to her, as such guardian, but could not pay her till William Gray was present tosee to a division, and that he refused to pay her anything. A witness, who was with her at said demand, agreed with her, except that he said it was made in 1863. Her counsel also read in evidence said return of August, 1866, her *caveat* thereto, and the judgment then made.

The Court charged the jury, that they had nothing to do with said judgment of the Ordinary, that it did not bar Woods from making another return, including the same claim for Confederate money lost, which had been disallowed, that they must decide this case upon its merits, as presented by the evidence, without any reference to said judgment; that the administrator's returns to the Ordinary could be used against him, but the judgment of the Ordinary, allowing or disallowing the return, was an *ex parte* proceeding, liable to be set aside, and could not be pleaded as a former recovery;

that the question was not whether the return had been allowed or not, but whether the administrator had properly discharged his duty, and if not, for how much was he liable. The jury found in favor of Woods, allowing said last return.

Plaintiff's counsel moved for a new trial, upon the grounds that said charge as to the judgment was erroneous, and that the verdict was decidedly against the weight of the evidence, etc. The new trial was refused, and that is assigned as error on said grounds.

DODSON & PAYNE, by E. F. HOGE, for plaintiffs in error.

C. D. McCUTCHIN, by D. A. WALKER, for defendant.

BROWN, C. J.

The record in this case shows that John Woods, the administrator of John Gray, deceased, made to the Ordinary his final return, showing a balance due the estate, which he filed with the Ordinary. And in his affidavit to the correctness of the return, he stated that this balance was funded in Confederate States bonds as the law required, and that the same was received and held in good faith. Within thirty days after the return was made, the guardian of the minor children of John Gray, deceased, filed objections to the return, on the ground that the administrator received the Confederate money, before the passage of the Act of April, 1863, by the Legislature, authorizing administrators to receive Confederate Treasury notes in payment of debts due estates, and that having said funds in hand he refused to pay out the same according to law, upon demand. Whereupon, the Ordinary cited and required the administrator to appear before the Court, and settle with the guardian of the minor heirs, the amount due from him as administrator.

At a subsequent term of the Court, the administrator appeared and filed his answer under oath, stating that he did receive the Confederate money after the passage of the Act. At the next term, the guardian appeared, and by plea denied

the correctness of the showing made by the administrator, and also controverted the correctness of other items in the return. · And at a subsequent term, the Court, having heard the evidence introduced on the trial, adjudged that the return was incorrect, and ordered that the administrator be required to make, immediately, another return on said estate, including in said return good currency, instead of the Confederate currency. In obedience to this order of the Court, the administrator afterwards made another return, in which he included the same item of loss by Confederate currency, etc. But he had entered no appeal from the judgment of the Court rendered against him on the hearing. To this last return, the guardian pleaded the judgment of the Court, disallowing the item in the first return, which related to the Confederate currency, in bar, as the judgment of a Court of competent jurisdiction upon the very point in issue. The case went by appeal to the Superior Court, and on the trial the Judge charged the jury, in substance, that they were to pay no attention to that judgment. The jury found for the administrator, and the guardian brings the case to this Court.

Section 2488 of the Code, directs that the Ordinary shall carefully examine the return and vouchers of the administrator, and if found correct and *no objection* be filed in *thirty days* from the time it is filed in office, he shall allow the same, etc. The return thus allowed and recorded (that is allowed without· objection) shall be *prima facie* evidence in favor of the administrator of its correctness. But this case does not fall within that rule. This was a proceeding under section 2472 of the Code, making objection to the return within the thirty days. That section declares, that whenever the Ordinary knows, or is *informed*, by any person *having an interest* in the estate, that the administrator wastes, or in any manner mismanages the estate, or that he or his securities are likely to become insolvent, or that he refuses or fails to make returns *as required by law*, or that, for any reason, he is unfit for the trust reposed in him, he shall cite such administrator to answer to such charge, at some regular term of the Court, and upon the hearing, the Ordinary may, in his

discretion, revoke the letters of administration, or require additional security, or *pass such other order* as, in his judgment, is expedient under the circumstances of each case.

Here the charge was, that the administrator had not made his return "as required by law," that is, that he had not made a correct return, but had credited himself with the Confederate money which he had, as it was alleged, no right to receive, when he took it in payment of the debts of the estate. And he was cited to appear and answer this charge. The statute gives the Court of Ordinary jurisdiction and authority, to hear and decide the point in issue in just such a case, and its judgment when rendered, becomes final and conclusive on the point in issue, if no appeal is entered. This view of the case is strengthened by reference to section 3553 of the Code, which declares that an appeal lies to the Superior Court from *any* decision made by the Court of Ordinary, except an order appointing a temporary administrator : *Provided,* that whenever an appeal shall be taken from a decision of the Ordinary made under section 2472 of this Code, such appeal shall not operate as a *supersedeas,* unless the executor or administrator shall first give a good and sufficient bond, etc. This shows conclusively that the law contemplates an appeal from a decision made in a proceeding under this very section of the Code.

It follows, therefore, that the parties to such a proceeding are bound by the judgment rendered, whether it is right or wrong, if they fail to enter an appeal within the time allowed by law, and that judgment is conclusive, and may be pleaded in bar of any subsequent proceeding, intended to controvert the point in issue at the former hearing and covered by the former judgment.

The record as it comes up to this Court in this case, is very much tangled, and there is confusion as to dates. But as we understand it, this was the only point in the case. Indeed it was so admitted by the counsel in the argument.

Judgment reversed.