### 3677. PEAVY v. CLEMONS *et al.*, administrators.

1. The return of an executor, administrator, or guardian, made to the court of ordinary and allowed by that court, is only prima facie evidence in his favor, as to its correctness, and may be impeached by evidence, not only in the court to which it was made, but in any other court having jurisdiction of the parties and of the subject-matter. The burden of proof is upon the party who seeks to impeach the correctness of the return.

2. Where, on appeal to the superior court from the court of ordinary, a paper probated in solemn form as the will of the decedent is declared not to be his will, and, by a consent verdict and decree, the executor named in the paper purporting to be the will is permitted to make a final return to the court of ordinary, as such executor, and, in pursuance of the consent verdict and decree, he does so, and no objection is made to the return, and it is approved and allowed by the court of ordinary, the correctness of the return can nevertheless be subsequently attacked and impeached by evidence, not only in that court, but in any other court in this State having jurisdiction of the subject-matter and the parties. The consent verdict and decree in no sense change the rule of law as announced in the foregoing headnote.

3. On the trial of this case the jury, having been charged by the judge, had remained out several hours, considering their verdict. They were brought into court by direction of the judge, for the purpose of ascertaining whether a verdict could be reached, and the following colloquy occurred: The court: "Mr. Foreman, have you reached a verdict?" Foreman: "No, sir." The court: "How do you stand as to numbers?" Foreman: "Ten to two." The court: "How long have you stood that way?" Foreman: "Some half an hour, I reckon." The court: "How did you stand previously to that time?" Foreman: "About seven to five." The court: "That is encouraging. You seem to be making progress towards a conclusion of the case, and I am glad to hear that you are. Of course, gentlemen, you realize the importance of making verdicts. While I understand at the same time that occasions may arise when jurors are honestly unable to agree, it is the duty, however, of the court, wherever the court has a reasonable hope that you may arrive at a unanimous conclusion, to give you all reasonable opportunity to do that; and that I am glad to do in this case. You can retire, gentlemen." *Held*, error. (1) The tendency of the language used by the judge was to encourage the ten jurors to adhere to their view of the evidence, and to discourage the two jurors in adhering to their view. (2) The two jurors might reasonably have inferred from the language used that in the opinion of the judge it would be their duty to surrender their individual convictions and agree with the majority. (3) Its tendency was to suggest that the jurors might arbitrarily compromise, divide, and yield, merely for the sake of agreement. (4) It amounted to an undue pressure by the judge upon the jury to agree to a verdict. (5) It was a violation of the spirit of the statute which mandatorily prohibits the trial judge from expressing or intimating any opinion on the facts. (6) The evidence was in conflict and about

equally balanced on the issues of fact, and a verdict would have been authorized for either party; hence, the error is of sufficient gravity to require another trial.

DECIDED FEBRUARY 12, 1912.

Complaint; from city court of Vienna—Judge Strozier. August 19, 1911.

This was a suit by the administrators of the estate of D. C. Clemons, deceased, to recover from W. B. Peavy money and property which they allege he received from the estate of D. C. Clemons while acting as an executor under the will of the decedent, and failed to account for. A verdict was returned in favor of the plaintiffs, for a portion of the money sued for; the defendant's motion for a new trial was overruled, and he excepted. It appears, from the evidence, that soon after the death of D. C. Clemons, the defendant produced an alleged will and probated it in solemn form as the will of D. C. Clemons. On a caveat to the probate of this will, there was an appeal from the court of ordinary to the superior court, and in the superior court a consent verdict was taken, finding that the paper offered for probate as the will of D. C. Clemons, deceased, was not the will of D. C. Clemons; and, after allowing certain commissions and expenses to Peavy as executor, it was further found that "said W. B. Peavy, executor as aforesaid, shall make out a final return to the ordinary of Houston county, showing the money and property that has come into his hands as such executor, together with vouchers for all moneys expended and allowed by this verdict;" and a decree was entered accordingly. Peavy made his final returns to the ordinary of Houston county in pursuance of this verdict. No objections were filed as to the correctness of the returns, and in due time they were formally approved and allowed by the ordinary. The defendant in the present suit sets up the verdict, and the returns made by him in pursuance thereof, as res judicata, and also insists that these returns could only be attacked in the court of ordinary, or by equitable petition in the superior court. At the conclusion of the evidence the trial judge submitted to the jury only two items claimed against the defendant, holding that there was no evidence to justify a finding against him as to the other items. The jury found in favor of the plaintiffs as to only one of the items submitted. This item was for $1,030 alleged to have been paid by the widow of the decedent to Peavy while he was acting as executor of the estate. The evidence as to this

item was in direct conflict. The widow testified, that, five days after the death of her husband, she turned over to W. B. Peavy, as executor, $1,030 belonging to the decedent; that this money consisted of "$1,000 in gold and $30 in greenbacks," and was in a "shot sack," where she found it after the death of her husband; and that subsequently she saw the same money in the possession of the defendant's wife, who was counting it. In corroboration of this testimony a grandson of the decedent testified, that he "saw a pretty good bulk of gold money in a shot sack" in the possession of the decedent some time before his death. The defendant testified positively that he had never received this money from the widow, and he further proved that the widow had stated to several persons after the death of her husband that she found no money among his effects; that all the money they had in the house had been stolen therefrom previous to his death, and that since this larceny he had not kept his money in his house, but had put it all in the bank at Unadilla. After the jury had received the instructions of the court and had been out for several hours considering their verdict, the trial judge had them brought into court for the purpose of ascertaining whether a verdict was likely to be reached, and thereupon the colloquy quoted above, in the third headnote, took place.

The motion for a new trial, in addition to the usual general grounds relied upon, specially assigns error on the refusal of the court to direct a verdict in favor of the defendant, on the ground that, as a consent verdict and a decree thereon were established, the matter was res judicata; that the returns of the defendant as executor, made to the court of ordinary in pursuance of the consent verdict and decree, and duly approved and allowed by the ordinary, could not now be attacked; that all the heirs, and the plaintiffs as administrators, were parties to this consent verdict and decree, and were estopped from pressing their suit in this court; and that the judge's language, in the colloquy which took place between him and the foreman of the jury, was an improper invasion of the province of the jury, and unduly influenced the jurors in their deliberations.

*George & Woodward, Crum & Jones,* for plaintiff in error.
*Busbee & Busbee,* contra.

HILL, C. J. (After stating the foregoing facts.)

1, 2. The verdict and decree relied upon as establishing the defense of res judicata is manifestly insufficient for that purpose. Their only effect, after the paper offered for probate had been declared not to be the will of the decedent, was a consent that W. B. Peavy, who had been acting as executor, should make his final returns to the ordinary of the county, showing the money and prop erty that had come into his possession as such executor. Thi., probably would not only have been his right, but his duty, without the consent verdict. There is nothing in this consent verdict which in the remotest degree indicates that these returns were to be accepted as true by the parties at interest. These returns as filed do not show this item of $1,030 of money, which it is alleged the executor had received from the widow; and the executor denied that he had ever received it. The law is well settled that the final return of an executor, guardian, or administrator to the court of ordinary of his county, although it may have been approved and allowed by the ordinary, is only prima facie evidence in his favor, as to its correctness, and may be impeached by evidence, not on'y in the ordinary's court, but in any other court having jurisdicti n of the parties and the subject-matter; the burden of proof being ipon the party who seeks to impeach the correctness of the return. Civil Code (1910), § 3994; *Brown* v. *Wright*, 5 *Ga.* 29. Judge Werner, in discussing, in the *Brown* case, supra, the rule that returns of executors, guardians, and administrators, made to the court of ordinary and allowed by that court, are to be considered only as prima facie evidence in favor of such trustees, says, that "creditors, legatees, distributees, 'and wards may impeach such returns, by evidence, in other courts, the burden of proof being on the party who seeks to impeach them. This, we have no doubt, is the safe and correct rule, for it will not do to say that because an executor, administrator, or guardian, by false and fraudulent accounts, supported by his ex parte acts and statements, and thereupon allowed by the court, shall be held conclusive in his own favor. Such a rule would be allowing the party to protect himself, and derive a benefit to himself, from his own fraudulent conduct. In Fermere's case Lord Coke said: 'Fraud vitiates all judicial acts, whether ecclesiastical or temporal.'" The rule as here announced by the learned judge remains the same in this State, and is in substance embraced in the

section of the code above cited. The consent verdict and decree relied upon as proving the defense of res judicata and estoppel does not by its terms preclude the right of interested parties to attack the returns made by the executor in the court of ordinary; and this attack could be made not only in the court of ordinary, but in other courts having jurisdiction of the subject-matter and the parties. *Dowling* v. *Feeley, 72 Ga.* 557; *Crawford* v. *Clark,* .110 *Ga.* 735 (36 S. E. 404) ; *Barber* v. *Woods, 39 Ga.* 643.

3. We come now to discuss the assignment of error based on the colloquy between the judge and the jury, which is set out in full in the third headnote of this decision. It is contended that the language of the judge, and especially the latter part of it, where he said, on being informed that the jury had previously stood seven to five, but then stood ten to two, " That is encouraging. You seem to be making progress towards a conclusion of the case, and I am glad to hear that you are," was an unwarranted invasion of the exclusive province of the jury to determine all issues of fact and to reach a unanimous verdict without any encouragement or assistance from the judge, except such assistance as might be derived from instructions upon the law applicable to the issues made by the evidence; that this statement either influenced, or had a tendency to influence, the minority of the jury to surrender their convictions and accept the opinion of the majority, and tended to impress both minority and majority of the jury with the fact that the judge approved of the conduct of those jurors who previously stood with the minority in going over to the majority; that this statement by the judge not only tended to commend the conduct of those jurors who had left the minority and gone over to the majority, but also tended to discourage the remaining two jurors in holding to their convictions as to what was the truth under the evidence, and to persuade them to abandon their individual convictions and go over to the ten jurors.

We think that the language of the trial judge is justly subject to the criticisms made against it. Each case must be determined upon its own facts, the true test being that wherever the language of the trial judge reasonably permits any interpretation or construction that could influence any one of the jurors to yield his convictions of the truth for the mere sake of an agreement and accept the views of the majority, or wherever the judge suggests that the jurors

might arbitrarily compromise, divide, or yield their individual views in order that a verdict might be found, it constitutes reversible error, since it in some degree detracts from that absolute fairness intended to be secured by jury trials. Neither an individual juror, nor the minority of the jury, should be unduly pressed to surrender his or its convictions merely for the purpose of unanimous agreement. The verdict should be the result which all the jurors have unanimously come to, unaided and unassisted by the slightest intimation or suggestion by the trial judge; and the measure of the trial judge's discretion in asking for information from the jury in order to enable him to determine the likelihood of an agreement and the proper exercise of discretion in the declaration of a mistrial should be limited to the general inquiry: Is there an agreement, or is there likely to be an agreement? Beyond this formal and general communication between the judge and the jury relating to an agreement "evil cometh." Especially is this true in this State, where, under the mandatory terms of the "dumb act" (Civil Code of 1910, § 4863), a trial judge is forbidden to express or intimate any opinion as to the facts of the case. The spirit of this act contemplates that during the progress of the trial, and until the verdict is finally received, the trial judge shall say nothing indicating any opinion as to which side should prevail, and do nothing that could in any manner unduly press the jury to agree upon a verdict. What we here contend for can not be regarded in the light of a mere technicality. It is a right vital to the value of jury trial, imbedded in the jurisprudence of this State, and secured by the mandatory terms of the statute. The Supreme Court has on several occasions had before it cases involving the question here discussed. A consideration of some of these cases will demonstrate how zealously that court has guarded the right of a unanimous verdict, which should be reached by the jury, uninfluenced by any expression by the trial judge, either of a coercive or a persuasive character. In *Alabama Great Southern Railroad Co.* v. *Daffron,* 136 *Ga.* 555 (71 S. E. 799), the following language is used: "The court should not unduly press a jury to agree upon a verdict; and in the use of any remarks designed to impress the desirability of reaching a verdict, he should be careful to refrain from any expression of a coercive nature or which possibly may mislead them into an erroneous method of reaching a verdict." In that case the language ob-

jected to was as follows: "Gentlemen of the jury, have you agreed upon the question as to the right to recover? Juror: We have, but differ as to the amount. Court: It does look like you might agree upon that; you ought to agree upon the amount. I might be going a little too far, but verdicts are mostly all compromises. No man gets all he wants in things of that kind; and having agreed upon the essential point, the question of whether or not there should be a recovery, it does look like you all might get together on some amount,—that is, you might make a conjunction, as defined by an old rural schoolteacher, who, when asked what a conjunction was, said, 'A conjunction is the coming together of two or more persons or things, as John and James met.' You may retire and see if you can come together." The Supreme Court held that this language was improper and was prejudicial to the defendant; that "its tendency was to suggest that the jury might arbitrarily compromise, divide, and yield for the mere sake of agreement." In the course of the opinion the learned Justice speaking for the court quotes with approval the language of the Supreme Court of Michigan, in Goodsell v. Seeley, 46 Mich. 623 (41 Am. R. 183, 10 N. W. 44). In that case, in response to an inquiry by the judge, the jury said that they "had not agreed, but stood eleven to one, and divided on $200." The judge in reply told them, "if that is the only difference, it would be better for the county and the parties on both sides that one or both sides yield so as to come together. It would be unfortunate for all to have a disagreement when the difference is so small," and he asked them to get together if possible. A new trial was granted upon this ground, and in the opinion Judge Cooley said: "It is no doubt true that juries often compromise in the way here suggested, and that by 'splitting the difference' they sometimes return verdicts with which the judgment of no one of them is satisfied. But it is an abuse. The law contemplates that they shall, by their discussions, harmonize their views if possible, but not that they shall compromise, divide, and yield for the mere purpose of an agreement. The sentiment or notion which permits this tends to bring the jury trial into discredit and to convert it into a lottery. It was no doubt very desirable to the public and to the parties that the jurors should agree if they could do so without sacrificing what any one of them believed were the just rights of the parties; but not otherwise." In *Georgia Railroad* v.

33

*Cole,* 77 *Ga.* 77, a suit to recover damages on account of personal injuries, which was closely contested on the facts, the judge, after the jury had been charged and had retired, had them brought back into the court-room, and asked them if they were likely to agree upon a verdict. One of the jurors replied that they were not. The court thereupon inquired whether the trouble was upon a point of law or fact, and the juror responded that it was upon a question of amount, and the judge said: "I can not aid you in that, as I know of, in any way, further than to say that, upon that matter, the jury ought to make a very earnest effort to agree . . upon the amount. Of course, a juror ought not to give up his convictions, if they are so strong, but there ought to be an effort to come to an agreement. You can retire and see if you can not agree upon the amount." It was held that this was error, and a new trial was granted. "The jury might have understood the court as favoring a finding for the plaintiffs; and his remarks might have induced some of them to give up opinions which they may have entertained in favor of the defendant." This was a unanimous decision, but one of the Justices concurred dubitante. It is apparent, from the opinion of the court, that a new trial would not have been granted if the case had not been a close one on the facts, in which a verdict for either party would have been authorized.

In *Parker* v. *Georgia Pacific Railway Co.,* 83 *Ga.* 540 (10 S. E. 233), Mr. Chief Justice Bleckley, speaking for the court, held that while the following language did not unduly press the jury to a verdict, "it went, perhaps, to the allowable limit:" "This jury is, in the eye of the law, as capable of deciding this case and reaching a verdict as any that may be empanelled hereafter, and I am disposed to give you some further opportunity to consider your verdict. Go to your room and make an honest effort to agree on a verdict, and follow the rule I have given you, and I do not think it will trouble you in agreeing." The rule which the trial judge referred to was that they should reconcile the testimony of conflicting witnesses if they could, without imputing perjury to any of them, and that they should find a verdict according to the preponderance of the evidence.

In *White* v. *Fulton,* 68 *Ga.* 513, the trial judge used substantially the language above quoted, saying that if the jury would follow the rule as to the preponderance of the testimony, and would

endeavor to reconcile the testimony of witnesses, there would never be a necessity for mistrials, and that there had been no mistrial in his circuit for three years. The court held that this was no invasion of the province of the jury, but disapproved the remarks on the subject of mistrials, and used the following language: "Under our view the court should abstain from making any remarks to a jury that would bear even the semblance of coercion to secure a result. Juries should be left free to act without any real or seeming coercion on the part of the court, and the verdict should, as to the facts, be the result of their own free and voluntary action."

In *Golatt* v. *State,* 130 *Ga.* 18 (60 S. E. 107), after the jury had been deliberating for some time, the judge had them brought into the court-room and asked them if they had agreed on a verdict, and, upon being answered in the negative, stated to them that it was their duty to agree in the case; that it had been fairly submitted to their consideration; that no juror should "stick out" in a spirit of stubbornness; that it was no credit to a juror to do that; but that if any juror had honest, abiding convictions which he found it impossible to reconcile, after due consultation with the other jurors, "let him stand by them;" and that it was the duty of the jurors to confer together and make an honest effort to agree. Although a majority of the Supreme Court held that the judge's language in that case was not error requiring a new trial, they held that it went "near or quite to the limit of what is permissible," and they indicated that they would have held otherwise if the case had been one of conflicting evidence or closely contested issues of fact, or of circumstantial evidence, or if there had been any error in the charge or rulings of the court on other subjects; and they affirmed the judgment because the case was "one of shocking murder, with no conflict in the evidence, and no apparent ground for palliation." Justices Atkinson and Holden, however, held that this language was improper and was reversible error, and that it "was of such a character as to mislead the jury as to their duty and press them too hard toward the finding of a verdict."

In the case of *Ball* v. *State,* 9 *Ga. App.* 162 (70 S. E. 888), this court held that the principle that a verdict must be the unanimous conviction of all the jurors was imbedded in the jurisprudence of this State, and this unanimity must be the voluntary conclusion of the jurors, uninfluenced by any instruction or suggestion from the

judge that might induce one juror to surrender his individual conviction of the truth and to accept the opinion of the other jurors. A majority of the court held that it was of doubtful propriety for the trial judge ever to inquire how the jury stands numerically, and that it was presumptively hurtful to the defendant for the judge, on information that the jury stood eleven to one, even remotely to suggest to the one juror that he ought to surrender his convictions to those of the majority. The language used by the trial judge to the jury in the *Ball* case was that "usually where the jury stands eleven to one, the one juror comes to the eleven, but, of course, you must be guided by your own consciences, as the one might be right and the eleven wrong." In that case the majority of the court, entertaining the view that the evidence was doubtful as to the identity of the accused as being the guilty party, reversed the judgment refusing a new trial, because of the language used by the judge to the jury, stating, however, that they would not do so for this error if the evidence had demanded the verdict.

We apprehend that there can be little doubt of the soundness of the general rule stated in the foregoing opinions. Doubt arises only on the application of the rule to the particular facts. In the light of the general rule and of analogous cases decided by our Supreme Court herein cited, and in view of the fact that the evidence in this case was almost equally balanced between the plaintiff and the defendant and that a verdict would have been authorized for either party, we are constrained to grant another trial, because of the presumptively harmful character of the language used by the judge to the jury. The defendant in error relies upon the case of *Winn* v. *Ingram, 2 Ga. App.* 757 (59 S. E. 7). An examination of the language used by the trial judge in that case does not disclose any material variance from that used by the trial judge in the present case. In so far, however, as the opinion in that case is in conflict with the views here expressed, it is overruled.

<div align="right">

*Judgment reversed.*