31884.   SOUTHERN RAILWAY COMPANY *v.* TAYLOR.

746

DECIDED MARCH 19, 1948.   REHEARING DENIED MARCH 30, 1948.

*Harris, Harris, Russell & Weaver, A. M. Zellner,* for plaintiff in error.

*E. W. Maynard, Carlton Mobley,* contra.

GARDNER, J. ■ ■ We will not here either specifically or substantially, set forth the evidence. It is conflicting. The jury returned a verdict in favor of the plaintiff. Counsel for the defendant, we think very properly, admit that the general grounds and the ruling of the court on the demurrers and the motion overruling the objections to the allowance of the amendment of the plaintiff, which exceptions are properly preserved pendente lite, are so closely related that they may be considered together. In other words, if the court did not commit reversible error in overruling the demurrers and in overruling the objections to the allowance of the amendments, the case so far as these contentions are concerned, and so far as the general grounds are concerned, should be affirmed, unless some one or more of the errors assigned in the amended motion for a new trial demand a reversal. It will, perhaps, be necessary in discussing the case to discuss certain phases of the evidence and certain rulings concerning the admission of evidence and certain considerations relative to the rulings of the court during the progress of the trial. In many respects they are overlapping, at least in some particulars. We have set out the pleadings somewhat in detail in order that we might more clearly discuss the contentions which arise from the record.

■ Counsel for the defendant states, and we think correctly, that the assignments of error may be specifically stated as follows: "1. The court erred in permitting the case to go to trial without requiring the defendant in error to set forth more specifically and describe more definitely the engine of the railway company which he alleged set out the fire.

"2. The court erred in permitting the defendant in error to amend his petition so that the case went to trial with the defendant in error claiming damages for the destruction of timber by fire and the diminution in the market value of the land in consequence of such destruction of timber.

"3. The court erred in not requiring the defendant in error to amend his pleadings in the court below to cure the defects pointed out by plaintiff in error in its grounds of special demurrers.

"4. The court erred in not granting a new trial and setting aside the verdict and judgment for the defendant in error because the defendant in error failed to carry the burden imposed upon him by law.

"5. The court erred in its ruling on testimony as set forth in grounds 1, 2, 3, and 4 of its amended motion for new trial." These grounds will be considered separately in the argument and citation of authorities hereinafter.

"6. The court erred in charging the jury as set forth in grounds 5, 6, 7, 8, 9, and 11 of the amended motion for new trial herein.

"7. The court erred in the conduct which is described in ground 10 of the amended motion for new trial."

Since counsel for both parties argue their respective contentions in this order, we will so deal with them.

■ ■ Because of the close relationship between this contention and the contention under the general grounds, it is admitted that they may be considered together and they are so treated in the briefs. This contention relates to the identity of the locomotive which is alleged to have set out the fire, and the general grounds go to the quantum of evidence introduced by the plaintiff to carry the burden of proof imposed on the plaintiff by law. So therefore, the question is, does the petition as amended sufficiently apprise the defendant as to the identity of the locomotive which is alleged to have set out the fire? Substantially, it is alleged on this point that the locomotive which set out the fire was a steam engine burning coal, without an adequate spark arrester, and that the fire was caused by such locomotive emitting live sparks which ignited the growth on the right-of-way, which caused the damage and that it passed near the place where the fire began "at approximately 12:30 or 1 o'clock p. m., the exact time unknown to your petitioner" on March 21, 1946. The defendant introduced in evidence a schedule of its north-bound freight trains which passed from 12 o'clock to 2 o'clock on the day in question as they reached Juliette, Georgia, which was in the vicinity of Dames Ferry and the property in question, as follows: First train No. 54 reached Juliette at 11:22 a. m. and departed at 11:27 a. m.; second train No. 54 reached Juliette at 12:27 p. m. and departed at 12:43 p. m.; Train No. 50 reached Juliette at 2:19 p. m. and departed at 2:24 p. m. One of the defendant's witnesses testified substantially that he was within a short distance of the place where the fire originated and that a coal-burning train passed near where he was working, and im-

mediately after it passed he observed a fire burning from the railway right-of-way to the property in question. He did not testify that he saw any sparks being emitted from the train, and that this was between 12:30 and 1 o'clock. Another witness for the plaintiff testified: "I remember where I was on March 21st, when I first knew about the fire. I was standing on the crossing at Dames Ferry, right near the crossing in the road. A freight train of the Southern Railroad passed while I was standing there, traveling north. I didn't have a watch, but it was around the middle of the day, somewhere between 12 and 2 o'clock. We were loading pulpwood at that time. Only one freight train passed there, going north, between 12 and 2 o'clock, and it was being pulled by a steam engine or coal-burning engine. It was a heavy train. . . I would say this particular train was running about forty miles an hour when it passed me at Dames Ferry that day . . and it was emitting sparks from the smoke-stack when it passed me at Dames Ferry. They were coming out of the smoke-stack some 25 or 30 feet high. Some of the sparks fell at my feet, about as large as the end of my thumb. . . To keep it from throwing fire and sparks, the engine is equipped with a spark arrester, a small mesh screen that fits down over the steam pipe where the steam exhaust comes through and creates a draft to burn it. . . I know it was between 12 and 2 o'clock because No. 50 went up about that time. It could have been on time, or could have been running ahead of time as an extra. I didn't look to see if he was flying any flag to indicate whether he was an extra train or not, but I know No. 50 was due along about that time. When I saw the train go by, I thought it was No. 50 and I still think it was No. 50. I knew what time No. 50 got there that day because I talked to the train dispatcher. I am not talking about any train now but No. 50. Train No. 50 left the Macon yards on March 21, 1946, at 1:10 p. m., and arrived at Juliette at 2:19, and left there at 2:24 p. m. That was the first No. 50. They run two sections of it that day. I learned on yesterday when No. 50 got to Juliette. I don't know what train Frank Johnson saw except what he told the court. I still say it was train No. 50 that set out the fire, and it got to Juliette at 2:19 according to the dispatcher. I got to Dames Ferry about 30 minutes prior to that time and was looking after some cars we

were loading there. I saw a bunch of negroes, there, and a few people around the store. I remember seeing a fellow Brown and a Mrs. Taylor. I was there about 30 minutes and I left when the train left. I don't know what time I got to Dames Ferry, but it was around 12 o'clock that day. I don't know the exact hour I went to lunch, but it was between 12 and 2 o'clock. I saw only one train go by Dames Ferry while I was there for about thirty minutes. I examined this report on yesterday. I know there were two sections of No. 50 that went along there, one about 1:45 and the other about 2:45, about an hour apart. I saw the first section of No. 50, and it reached Juliette at 2:19 and departed at 2:24. I am assuming it was the first section of No. 50, and from what the dispatcher said it must have been the first section of No. 50. I left there after this train went by and drove to my home, which was four miles west of Dames Ferry. I proceeded along the Dames Ferry and Forsyth highway. My home was on that highway, and about the time I got home I saw the smoke on the railroad track. The train went north and immediately thereafter I left and went to my home, which was about four miles away, and as soon as I got home I saw the smoke on the railroad. It took me about ten minutes to go from Dames Ferry to my home. I did not stay any length of time after I got to my home and saw the smoke on the railroad track. . . It was about fifteen or twenty minutes after that train passed Dames Ferry about 2 o'clock that afternoon before I saw any smoke. There was no smoke up the railroad track from Dames Ferry when the train went by. It was after the train went by before I saw any smoke up the railroad track, no evidence of smoke up the railroad until after the train passed." It will be observed that this witness, Mabry, had formerly worked as an engineer and knew something of the trains and the schedule, the numbers and the like, and his evidence as well as the evidence of the other witness, in our opinion, is sufficient to support the allegations of the petition so far as the general grounds are concerned. The defendant on this point put up evidence of its agents (workmen) and of its engineers that No. 54, which reached Juliette at 12:37 and departed at 12:43, had a proper spark arrester and that it did not by any carelessness start the fire. Although the trial consumed some considerable time, the defendant

did not account for the condition of train No. 50, nor of the other train. We think that the allegations of the petition as amended are sufficiently broad to include the time of the day that the other two trains passed the place where the fire originated. Thus, in view of the plaintiff's testimony and the testimony as a whole, the evidence is sufficient to sustain the general grounds on a motion for a new trial.

Counsel for the defendant rely for its contentions here on the case of *Southern Ry. Co.* v. *Puckett,* 121 *Ga.* 322 (48 S. E. 968). A reading of that case shows to our minds that it is not authority for the contentions made that the allegations of the petition were too indefinite as to time. The portion of the body of that opinion holds only that the defendant railway company was entitled to know the date. It does not go to the extent of holding that the very minute and hour must be alleged. In that case it is held: "While a defendant may be liable for an injury inflicted within the period covered by the statute of limitations, there may be circumstances under which he is entitled to know the exact date of the occurrence charged, in order to make his defense; but in such a case it is necessary by demurrer or motion to call for particularity of dates." It will thus be observed that the case cited alleged that, on or about October 27 and 28, 1901, and at various other dates during 1899, 1900, 1901, etc., whereas in the instant case the date was not only given as March 21, 1946, but the "approximate hours" were alleged and it was further alleged that the exact time of the day was unknown.

The next case cited and relied upon by the defendant is that of *L. & N. Railroad Co.* v. *Moreland,* 143 *Ga.* 414 (85 S. E. 341). The defendant relies on the following from that opinion: "The petition as amended alleged that on a named date the defendant's engine emitted 'cinders, sparks and live coals'. . . Another allegation was that 'plaintiff is unable to state the engine . . which burned said levee and hedge.' *Held:* that this part of the petition does not plainly and distinctly set forth the ground of complaint in such manner as to put the defendant on notice of what engine it is claimed emitted the sparks so that it might be prepared to show, if it could, that any emission of sparks was not due to negligence in the equipment and operation of the engine. Under the circumstances it was erroneous to overrule a ground of special

demurrer which complained that the petition failed to allege at what time of day the fire occurred." In this latter case no description whatsoever of the train was given and no attempt was made to set forth the approximate hour of the date, whereas in the instant case the date was given and the approximate hour was given, and it is further alleged "that the exact time of the day was unknown."

Counsel call our attention also to the case of *Seaboard Air-Line Ry.* v. *Jarrell*, 145 *Ga.* 688 (89 S. E. 718). In that case the Supreme Court held in effect that—as to a fire which resulted in the destruction of the plaintiff's property, which fire became apparent in less than an hour after the passage of a train over the tracks of the company, from the engine of which train the plaintiff insisted that sparks emitted which caused the fire—"there is no testimony to show that the sparks were coming from the engine at the time it passed the property or that it caused the fire, other than the following: That the wind was blowing in the direction of the property from the track, that there was an accumulation of grass and other combustible matter on the right-of-way between the house which was burned and the track, that there was no fire in or near the mill on that day or for several days prior to the fire, and that the fire began to burn on the side of the mill next to the track. This was not enough to authorize the jury to find that the engine of the defendant caused the fire by the emission of sparks, *there being proof to show that the two engines which passed on the day of the fire and prior thereto were properly equipped with approved spark arresters, which evidence was uncontradicted.*" The facts in the instant case differentiate it from the facts of the cases cited by the defendant here.

On the other side of the proposition, we call attention to the case of *L. & N. Railroad Co.* v. *Studdard*, 34 *Ga. App.* 570 (130 S. E. 532). In that case Judge Bell, speaking for the court, specifically mentioned the *Jarrell* case, supra, and distinguished it as we have here endeavored to do. He said: "1. In *Jarrell* v. *Seaboard Air-Line Railway*, 21 *Ga. App.* 415 (2) (94 S. E. 648), this court said that 'it is clear that the decision of the Supreme Court [in *Seaboard Air-Line Railway Company* v. *Jarrell*, 145 *Ga.* 688, 89 S. E. 718] was distinctly predicated upon the fact that there was uncontradicted evidence that the two engines

which passed shortly before the fire was discovered were properly equipped with spark arresters, wherefore the circumstantial evidence offered to show that the fire was caused by sparks emitted from an engine of the defendant company was not sufficient to 'reasonably establish the theory relied upon, and to preponderate to that theory, rather than to any other reasonable hypothesis.'

"2. Evidence to the effect that a locomotive engine of the defendant passed near the plaintiff's property, and showing circumstantially that within a few minutes thereafter a fire arose in the grass and other combustible matter on the defendant's right-of-way at a point which the engine had passed, and that there was no other source from which the fire likely originated, was sufficient to authorize a finding that it was caused by a spark or sparks emitted from the engine as alleged. [Citing cases.]" See also, in this connection, *Southern Pine Co. of Ga.* v. *Smith,* 113 *Ga.* 629 (38 S. E. 960). Therefore we conclude that, so far as the contentions on the assignment of error here considered are concerned, no reversal is required.

We come next to consider whether the court erred in allowing, over objections, an amendment to the petition which added a second count. The original petition was based upon a claim for damages for the diminution in the value of the land before and after the fire, as well as the value of certain specifics. The second count was based on the value of specifics. The gravamen of the objections to the allowance of the amendment is that, while the plaintiff could base his cause of action and recover damages upon proof of either the diminution in the value of the land before and after the fire, or for the value of specifics damaged by the fire, the plaintiff could not join in his petition two counts, as the court permitted. It is the contention of the defendant that the plaintiff was required to elect whether he would ground his cause of action on the one or the other right of recovery before his suit was filed. It is contended that the original petition should have been brought either for the diminution in the value of the land or for the value of specifics alleged to have been destroyed. The trial court took a different view and permitted the plaintiff, over objections, to amend his petition by adding a second count, and requiring the plaintiff, after the conclusion of the evidence for both sides, to elect upon which count

he would rely for a verdict. After the evidence was in, the plaintiff elected to rely on the second count. In this we do not think that the court erred. As stated, counsel for the plaintiff concedes that the cause of action here could have been based originally on either the claim for damages in the diminution of the value of the land, or on damage to specifics. Therefore, the only question here is, could both be brought in the same petition, in separate counts? To sustain its theory, the defendant relies upon the case of *Southern Railway Co. v. Birch,* 66 *Ga. App.* 270 (17 S. E. 2d, 601). No other authority is cited or relied upon by the defendant in this regard. That case contains three counts, each of which sought a recovery for damage to specifics. There was no count in that case seeking a recovery for the diminution in the value of the land before and after the fire, and what was there said with reference to diminution in the value of the land was merely illustrative of damage to specifics, which was the only kind of damage for which recovery was sought in that case. It is true that in headnote 5 of that case this court said: "the two causes of action are separate and distinct, and must not be confused or overlapped; and all proofs must go in support of the one or the other." In theory, of course, they are two separate and distinct causes of action, and one can not recover damages for both, but we find no decision or principle of law where the two may not be laid in separate counts in the same petition. It is analogous to the principle that a Code section in a criminal case may contain two separate and distinct offenses embraced within or substantially within the same state of facts, but still they may be charged in different counts in the same indictment. *Hamby v. State,* 76 *Ga. App.* 549 (46 S. E. 2d, 615). In our opinion the decision in *Southern Railway Co. v. Birch,* supra, is not susceptible of the construction placed upon it by the attorneys for the defendant. If in reading it as a whole the phraseology of headnote 5 is susceptible of the construction which counsel for the defendant placed upon it, then we have this to say, the phraseology is inapt as applied to the facts in that case. In *Wrightsville & Tennille R. Co. v. Barrett,* 39 *Ga. App.* 612 (4) (147 S. E. 916), this court said: "The true measure of damage in a case of this kind 'is the diminution in the market value of the realty, unless the value of the trees at the time and place

of their being felled, plus the incidental damage to the realty, exceeds the diminution in market value of the land; in which event the plaintiff is entitled to claim the higher measure. See *Central R. Co.* v. *Murray,* 93 *Ga.* 256 (20 S. E. 129); *L. & N. R. Co.* v. *Kohlruss,* 124 *Ga.* 250 (52 S. E. 166); *Western & A. R. Co.* v. *Tate,* 129 *Ga.* 531 (59 S. E. 266)'; *Milltown Lumber Co.* v. *Carter,* 5 *Ga. App.* 344 (2), 349 (63 S. E. 270). The court's instructions on the subject of the measure of damage contained no error as against the defendant." Therefore it follows that the court did not err in allowing the amendment adding the second count and requiring the plaintiff, after the evidence was closed, to elect on which count he would rely for a recovery.

■ The amendments to the petition, in response to the special demurrers, were sufficient to cure the meritorious grounds of error pointed out in the special demurrers and the court did not err in overruling the other special demurrers urged.

■ We come next to consider special grounds 1, 2, and 3. They were argued together and we will deal with them together. Error is assigned on the admission of certain testimony of the witness Mabry, a portion of whose testimony is set forth in division 2 (a). The portion of the testimony involved here was that set out above with reference to the train No. 50, and with reference to the evidence regarding the emission of sparks and the size of the cinders. This testimony was objected to on the ground that it was too vague and indefinite, that it had nothing to do with the issue involved, and that it was prejudicial. In overruling the objection to this testimony the judge, speaking to the jury, said: "It would be up to you and you alone to say whether or not it is the same train that has been testified to by the other witnesses, or whether or not it is the same train or the particular train, if it was, that started this fire complained of." In the same paragraph and as a part of it, the court said: "The court does not mean to intimate an opinion to you, but what the court is trying to say is that it is all a question of fact for you to pass on and solely for you to pass on. Go ahead." See, in this connection, *Southern Railway Co.* v. *Richardson,* 48 *Ga. App.* 25 (9) (172 S. E. 79). There are other decisions to the same effect.

The cases relied on by the defendant, *Georgia Railroad Company* v. *Hicks,* 95 *Ga.* 301 (4) (22 S. E. 613), and *Metropolitan*

*Life Ins. Co.* v. *Saul*, 189 *Ga.* 9 (5 S. E. 2d, 214), are not in point as to special ground 3. In those cases the questions involved did not call for an expert opinion, but in the instant case the witness Mabry, having previously been an engineer, was an expert as to what size of cinders would be prevented from going through the meshes of a properly designed and maintained spark arrester. Therefore it follows that Mabry was qualified to testify on this subject as an expert concerning the spark arrester. We think it is general knowledge that the average juror knows very little, if anything, concerning the design and maintenance of spark arresters on a coal-burning locomotive. There are no merits in the assignments of errors on these grounds.

■ Special ground 4 complains of the admission of cinders which had been picked up near the place where the alleged fire began. The witness Mabry, in company with the attorney for the plaintiff, picked up these cinders a few days before the trial. Mabry testified that the cinders introduced in evidence were similar in size to those which he saw coming from the smokestack of the defendant's locomotive. In admitting these cinders in the instant case, the court stated: "I will allow the cinders in, not as having been the cinders that were thrown from this engine, if there were any thrown from an engine, but solely based on this witness's testimony that they were comparative in size to the ones he saw emitted from an engine." Counsel for the defendant rely on *A. C. L. Railroad Co.* v. *McElmurray Bros.*, 14 *Ga. App.* 196 (6) (80 S. E. 680), which reads: "It was erroneous to admit in evidence a package containing sparks and cinders, it not appearing that they emanated either from the engine which set out the fire or from any other engine of the company which it was alleged caused the damage." A casual reading of the ruling in that case as applied to its facts clearly distinguishes it from the facts of the instant case in view of the restrictions and limitations which the court imposed upon the jury in admitting, for their consideration, the cinders in the instant case. The court properly admitted this evidence as a circumstance to be considered by the jury.

■ Special grounds 5, 6, 7, 8, and 9 all assign error on certain excerpts from the charge of the court. It is elementary that the charge must be looked to as a whole and not any particular ex-

cerpt or excerpts from it. When we apply this principle to this case as to the excerpts complained of, we find no reversible error in either of them. Viewing the charge as a whole, which we have carefully read in view of the assignments of error in these grounds, we find that it was fair, clear, applicable to the pleadings and the evidence, and without reversible error. We see no benefit to accrue to anyone to analyze these assignments of error as against the charge. This is true, notwithstanding the authority cited in support of special ground 5, *Harrison* v. *Southern Ry. Co.*, 120 *Ga.* 1054 (48 S. E. 408), and the authorities cited under special ground 6, *Livsey* v. *Georgia Ry. & Elec. Co.*, 19 *Ga. App.* 687 (91 S. E. 1074); *Charleston Railway Co.* v. *Patton*, 22 *Ga. App.* 557 (96 S. E. 504), and *Georgia Brewing Assn.* v. *Henderson*, 117 *Ga.* 480 (43 S. E. 698). There are no authorities cited in support of the assignments of error under special grounds 7, 8, and 9.

▪ In special ground 10 error is assigned on the ground that, after the case had been submitted to the jury, the court recalled them and inquired of the foreman whether they had reached a verdict. The judge was informed that the jury had not. He then asked them as to how they stood as to numbers, but not as to parties, whereupon the foreman informed the court "nine to three." The court then inquired whether they were thus divided on a question of fact or one of law. The foreman then stated that it was a question of fact. The court then stated: "Well, I didn't send for you to hurry you. It was on account of a message that I received a while ago. I am not trying to force a jury to reach a verdict in this case, but I want to help you in every way possible. We have been trying this case for a number of hours, and if there is any way this jury can conscientiously reach a verdict it is its duty to do so. However, I do not want this jury to get the impression that this court is trying to force the jury to reach some kind of a verdict, or to get the impression that the court is trying to punish the jury, but the court wants to be of any kind of help he can on matters or questions of law. The court can not, however, aid you on the facts, as that is a matter entirely for the jury. However, I can give you this rule: In civil cases, where the jury can not reconcile the testimony of witnesses conflicting, they can find a verdict according to the

preponderance of the evidence. If you follow this rule, I think you will have no difficulty in arriving at a verdict. If the jury would follow this rule, there would never be any necessity for a mistrial in a civil case. I wish you would all go back to your room and make another honest effort to agree on a verdict and follow the rule I have just given you and I don't think you will have any trouble in agreeing on a verdict. Retire, gentlemen."

In the early case of *White* v. *Fulton,* 68 *Ga.* 511, 513, a practically identical assignment of error was made, and the court said: "Neither do we find any error in the court's inquiring, through the officer in charge of the jury, 'whether they had agreed or were likely to agree upon a verdict,' and on an answer in the negative being returned, for the court, on its own motion, to recall the jury to their box and give them in charge a rule of law as to their right, 'when there is a conflict in the evidence of witnesses and they could not reconcile the same, that they might find a verdict according to the preponderance of the testimony.' The charge of the court being substantially as follows: 'If you disagree about a matter of law, I could aid you, but as it is a matter of evidence, I can not aid you as you are the judges of the evidence, except by some rules of law for your guidance. I can, however, give you this rule: In a civil case, where the jury can not reconcile the testimony of witnesses conflicting, they can find a verdict according to the preponderance of testimony. If you will follow this rule, I think you will have no difficulty in arriving at a verdict. If juries would follow this rule, there would never be any necessity for a mistrial in a civil case. I have been judge of this circuit for three years, and if you make a mistrial it will be the first one made in the circuit since I have been judge. Go to your room, and make an honest effort to agree on a verdict, and follow the rule I have given, and I don't think it will trouble you in agreeing.' We see no invasion of the province of the jury as complained of in the charge of the judge, as above given. The Code, section 3749, declares, in all civil cases, 'the preponderance of testimony is considered sufficient to produce mental conviction,' and this was the rule the court charged. The judge gave no intimation as to which side the preponderance tended. As to the remarks of the court on the subject of mistrial, etc., while we can not endorse fully all he said on

this subject, yet we do not consider it sufficient to reverse this judgment. Under our view the court should abstain from making any remarks to a jury that would bear even the semblance of coercion to secure a result. Juries should be left free to act without any real or seeming coercion on the part of the court, and the verdict should, as to the facts, be the result of their own free and voluntary action. It has often been announced by this court 'that where the evidence is conflicting, and no rule of law has been violated, and there is sufficient evidence to sustain the verdict, this court will not interfere.' As we find no error of law in this record, on the part of the court, and the evidence is sufficient to sustain the verdict, the judgment below is affirmed." In a comparison of the exception here made to what the trial court said and what was said by the trial court in *White* v. *Fulton*, supra, to our way of thinking the statement here excepted to is less likely of harm than in the case cited. This is true notwithstanding what this court said in *Peavy* v. *Clemons*, 10 *Ga. App.* 507 (73 S. E. 756), with reference to the preponderance of evidence. Upon a careful consideration of the evidence in the case at bar and that referred to in the *Peavy* case, we think that they are differentiated on their facts. We might also call attention to *Golatt* v. *State*, 130 *Ga.* 18 (3) (60 S. E. 107). In that case, a criminal case, the court used language similar to that herein of which complaint is made. Also, we call attention to another criminal case, *Yancy* v. *State*, 173 *Ga.* 685 (5) (160 S. E. 867). Also see, in this connection, *Gambo* v. *Dugas & Son*, 145 *Ga.* 615 (3) (89 S. E. 679), in which the trial court had the jury return and used to them language which we think much more harmful than that in the present case. We will not quote it here, but Judge Lumpkin, speaking for the court, said: "Held, that this charge pressed the urging of the jury to agree upon a verdict to the utmost line permissible, and to the very verge of error. It is much better for trial judges to be conservative in such matters, rather than to bring their instructions so close to the line of undue pressure, with the danger that in a close or doubtful case, or one where there is any other error, it might require a retrial of the case. But, under the facts of this case and under former rulings of this court, the charge above stated will not necessitate a reversal." In that case it will be found that

the court cited the case of *White* v. *Fulton,* supra, and many others, to sustain an affirmance. See, in this connection, also *Gaddy* v. *Harmon,* 191 *Ga.* 565 (13 S. E. 2d, 357), and *Hyde* v. *State,* 196 *Ga.* 475, 491 (26 S. E. 2d, 744), a criminal case, which was affirmed. In the latter case the court said: "The judge in the instant case, though firm in admonishing the importance of juries making verdicts, was careful not to intimate or express any opinion as to the propriety of any particular verdict, nor did he make any suggestion tending to coerce any particular group of the jurors to agree with the others." Then, after citing many cases dealing with the question presented here, pro and con, the court had this to say: "Considering the language used in the present case in the light of former rulings of this court and in further consideration of the abundance of evidence on behalf of the State, thus keeping in mind that this could not be said to be one of that class of cases where the issues turned on such a narrow thread as has appeared in some of the cases cited, where reversals were ordered, we can not say that the charge complained of was error requiring a reversal of the denial of a new trial." In conclusion, on the assignment of error before us, in view of the fact that the Supreme Court had so often admonished the trial judges to use caution, we see no point in here making any repetition of them, or in making any further comment regarding the duty of trial judges. Suffice it to say that under the facts in the instant case and in view of the authorities cited, we feel constrained to affirm the judgment of the court below insofar as this special assignment of error is concerned.

■ In special ground 11 error is assigned on an excerpt from the charge of the court as follows: "We may take it as the established law of this State, that when proof is made that the property of one person has been injured or destroyed by fire occasioned by sparks from a locomotive, the burden is on the railroad company to show that the emission of such sparks or the escape of the fire from the locomotive was not due to the want of ordinary diligence on the part of itself or its servants, either as to the condition of the locomotive, or in its management and operation. It is always incumbent on the plaintiff to make proof that the fire was communicated by the locomotive of the defendant company." Error is assigned on this charge, substantially

as follows: (a) because it gave to, the plaintiff the right to re-cover on an inference of negligence to be drawn from the proof· of certain facts, which rule of evidence was established by the legislature and now codified in the Code, § 94-1108; (b) that it placed upon the defendant a burden of proof greater than that imposed by law; (c) that it gave to the plaintiff the benefit of a presumption which persisted throughout the trial and after the defendant had introduced evidence to rebut the inference of negli-, gence arising by proof of damage to property of the .plaintiff by the operation of the defendant's trains. The defendant then pro-ceeds in this ground to call attention to certain portions of the evidence introduced by both the plaintiff and the defendant in order to sustain the assignments of error in this ground. Again here it might be proper to revert to the charge of the court, which more fully covers the question here under consideration, rather than to rely on an excerpt from the charge. The paragraph im-mediately preceding the excerpt of which complaint is made is as follows: "In this connection, I charge you, gentlemen of the jury, that the law does not require that engines shall be so con-structed, equipped or managed as that no sparks of fire shall escape from them; and even if a fire does originate from a spark thrown out by a locomotive, that, of itself, does not, without more, render the defendant liable. Negligence must be made to appear. Assuming in this case that the burning of the property of the plaintiff was occasioned by fire thrown out from the engine, the defendant is to be held liable or not, as the facts establish, or fail to establish negligence on its part; and in determining that question, the condition of the engine, and the manner in which it was handled at the time of the fire, will control the finding." Following this, is the excerpt on which error is assigned, and we will not again quote it. Immediately following the excerpt, the court charged: "Gentlemen of the jury, I charge you in that connection that the burden is on the plaintiff in this case to prove that the fire was set out by the locomotive of the defendant com-pany, that is, you must be satisfied from the evidence in this case, before there could be any recovery by the plaintiff, that fire was emitted from the engine of the defendant, the railroad company, before you would be authorized to find any verdict against the defendant company. There is no presumption that the railroad

set out the fire, and if the plaintiff fails to prove to your satisfac-
tion, by a preponderance of the evidence, that the railroad set
out the fire, it would be your duty to find for the defendant.
There could be no recovery against the railroad company unless
you find from the evidence in this case the railroad company's
locomotive actually set out the fire negligently."

Counsel for the defendant rely upon four cases to sustain its
contention as to the assignments of error on this ground. The
first of these is *Macon, Dublin &c. R. v. Stephens,* 66 *Ga. App.* 636
(19 S. E. 2d, 32). In that case the court charged the provisions
of the statute as set forth in the Code, § 94-1108, verbatim. The
excerpt from the charge in the instant case does not do this ver-
batim or substantially. Particularly is this true when we view
the excerpt excepted to in its proper setting under the whole
charge. Our attention is next called to the case of *Central of
Georgia R. Co. v. Cooper,* 45 *Ga. App.* 806 (165 S. E. 858). In
that case also the provisions of the statute to the effect that proof
of the injury resulting from the operation of the defendant's train
is prima facie evidence of negligence was charged. Not so in the
instant case. Our attention is next called to *Jones v. Powell,* 71
*Ga. App.* 202 (30 S. E. 2d, 446). In that case a verdict was
directed and hence there was no charge of the trial court. Our
attention is also called to *Western & Atlantic R. Co. v. Gray,* 172
*Ga.* 286, 308 (157 S. E. 482). We can not find in that case any
authority to sustain the contentions here made. Our interpre-
tation of the charge as a whole is to the effect that the burden
throughout the trial was on the plaintiff to show negligence as
alleged; and the court further charged, "there could be no re-
covery against the railroad company unless you find from the
evidence in this case that the railroad company . . set out the
fire negligently." The court then charged: "Assuming in this
case that the burning of the property of the plaintiff was oc-
casioned by fire thrown out from the engine, the defendant is to
be held liable or not, as the facts establish, or fail to establish,
negligence on its part; and in determining that question, the con-
dition of the engine, and the manner in which it was handled at
the time of the fire, will control the finding." Then follows the
excerpt on which error is assigned. The court then immediately
charged that the burden is on the plaintiff to prove that the fire

was set out by the defendant's locomotive; that there is no presumption that the railroad set out the fire and that there could be no recovery "unless the railroad actually set out the fire negligently." The court further charged: "where there is an allegation of fact alleged in the plaintiff's petition and admitted to be true in the answer of the defendant, the jury would be authorized to accept such allegation of fact as true without any further proof upon the part of the plaintiff; but where there is an allegation of fact set forth in the plaintiff's petition and is denied in the answer of the defendant, then the burden is upon the plaintiff to prove the truth of such allegation to the satisfaction of the jury by a preponderance of the evidence before the jury would be authorized to accept such allegation as true." It was further charged: "The burden of proof is on the plaintiff to prove that the defendant's engine negligently set out the fire which destroyed the property described, and also that the defendant was negligent in that its engine was not equipped with a proper spark arrester, causing the engine to throw out the sparks and which burned the timber and other growth on the plaintiff's land before he could recover damages." Then further it was charged: "If you find that the evidence submitted to you in this case does not warrant or support the contentions or theory laid down by the plaintiff in his declaration as to the manner or cause of this occurrence, then he is not entitled to recover." The court then also charged "that, before the plaintiff in this case would be authorized to recover, he must establish by a preponderance of the evidence that the fire which is alleged to have caused the damage of which he complains, was started by an engine of the Southern Railway Company, and this theory of the case must be proven so as to exclude every other reasonable hypothesis in the case." We could go on further analyzing the charge in the light of the assignments of error and the evidence, but we deem it unnecessary to do so. The record in this case is somewhat voluminous, consisting of 142 pages. The briefs are likewise voluminous, consisting of approximately 80 pages. We do not mention this in any way whatsoever of criticism. We mention it only for the purpose of showing that it is not practical to discuss at length every detail of the record and the assignments of error argued by counsel. We are satisfied that there are no reversible errors in the record, and

the judgment overruling the amended motion for a new trial is therefore affirmed.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*